530 F.2d 750
 Leon WHITE et al., Plaintiffs-Appellants,
v.
C. Vaughn ROUGHTON, Supervisor of the Township of the City
of Champaign and Wesley M. Schwengel, Chairman of
the Champaign County Board of
Supervisors, Defendants-Appellees.
 No. 75--1195.
 United States Court of Appeals,
Seventh Circuit.
 Argued Dec. 5, 1975.
Decided Feb. 27, 1976.
 
 1
 Eugene M. Thirolf, Champaign, Ill., for plaintiffs-appellants.
 
 
 2
 James L. Capel, Jr., Champaign, Ill., Frederic M. Grosser, Asst. State's Atty., Urbana, Ill., for defendants-appellees.
 
 
 3
 Before CUMMINGS and BAUER, Circuit Judges, and McLAREN, District Judge.*
 
 
 4
 This appeal is from the denial of a preliminary injunction to prevent the termination of general assistance grants[1] to plaintiffs Leon White and Elester Walker and to require defendants to provide general assistance to plaintiff Beatrice Silagy. The actions of the defendants in administering township general assistance grants are alleged to violate plaintiffs' procedural due process rights under the Fourteenth Amendment.[2] For the reasons stated below, the order of the district court denying a preliminary injunction is reversed and remanded with directions.
 
 I.
 
 5
 Defendant C. Vaughn Roughton is supervisor of the town of the City of Champaign Township. In this capacity he administers the general township assistance program which provides locally collected taxes for distribution as welfare to needy township residents. (T10--11);[3] Ill.Rev.Stat. ch. 23, § 6--1 et seq.
 
 
 6
 Plaintiffs claim that defendant Roughton (1) operates the general assistance welfare program without published standards for eligibility or the amount of aid given; (2) terminates general assistance without giving the recipient notice and a hearing prior to that termination; (3) denies applications for general assistance welfare without giving the applicant notice and a hearing after the denial of the application; (4) fails adequately to inform recipients and applicants of their right to appeal. Roughton terminated the assistance being received by plaintiffs White and Walker and denied the application for assistance of plaintiff Silagy.
 
 
 7
 Defendant Wesley M. Schwengel is Chairman of the Champaign County Board of Supervisors. He has assumed the responsibility of the County Board in receiving appeals from decisions of the township supervisors granting or denying general assistance (T18, 32); Ill.Rev.Stat., ch. 23, § 11--8. Plaintiffs allege that Schwengel, once having assumed the responsibility for appeals, has failed to establish a consistent and orderly appeal procedure.
 
 
 8
 Plaintiff White received general assistance in the form of 'food orders' for five periods of one week each in 1974.[4] He received this last allotment of assistance on October 8, 1974 (T21, 22). Subsequent to that, his assistance was terminated. He was given neither a written notice of his termination nor any explanation as to the reason for the termination.[5] White was not informed of his right to appeal or provided with information as to how he might appeal.
 
 
 9
 Plaintiff Walker was provided assistance in the form of a food order for $14 on August 23, 1974. Defendant Roughton also paid $65 for Walker's rent from October 1 to November 1, 1974. Subsequent to that payment, Walker's assistance was terminated without written notice and without informing him of his right to appeal.[6] (T28, 88).
 
 
 10
 Plaintiff Silagy applied for township general assistance on at least three occasions in 1974. She was denied assistance but was never informed of the reasons supporting the rejection of her application nor informed of her right to appeal (T57--80).[7]
 
 II.
 
 11
 In Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), the Supreme Court held that procedural due process requires that welfare recipients must be provided with adequate notice and an evidentiary hearing before benefits may be discontinued. 397 U.S. at 260--68, 90 S.Ct. at 1016, 25 L.Ed.2d at 295. In Goldberg, the plaintiffs alleged that certain New York State and New York City officials, who administered federal and state welfare programs, had terminated or were about to terminate assistance without prior notice and a hearing. 397 U.S. at 255--56, 90 S.Ct. at 1012, 25 L.Ed.2d at 289. In discussing the constitutional rights of welfare recipients, the Court noted:
 
 
 12
 '. . . termination of aid pending resolution of a controversy over eligibility may deprive an eligible recipient of the very means by which to live while he waits. Since he lacks independent resources, his situation becomes immediately desperate. His need to concentrate upon finding the means for daily subsistence, in turn, adversely affects his ability to seek redress from the welfare bureaucracy.' 397 U.S. at 264, 90 S.Ct. at 1018, 25 L.Ed.2d at 297.
 
 The Court further reasoned that:
 
 13
 "The fundamental requisite of due process of law is the opportunity to be heard.' . . . The hearing must be 'at a meaningful time and in a meaningful manner.' . . . In the present context these principles require that a recipient have timely and adequate notice detailing the reasons for a proposed termination, and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally.' 397 U.S. at 267--68, 90 S.Ct. at 1020, 25 L.Ed.2d at 299.
 
 
 14
 The Goldberg requirements have been applied in numerous cases similar to the one now before the court. In Mothers' & Children's Rights Organization v. Sterrett, 467 F.2d 797, 798 (7th Cir. 1972), this Court affirmed a permanent injunction, restraining Indiana's Administrator of Public Welfare and Welfare Board members from terminating or reducing Public Assistance Benefits unless the recipients were given a prior hearing.
 
 
 15
 Similarly, in Brooks v. Center Township, 485 F.2d 383 (7th Cir. 1973), cert. denied, 415 U.S. 911, 94 S.Ct. 1455, 39 L.Ed.2d 496 (1974), the plaintiff began receiving rent and food assistance from the defendants in February 1969 pursuant to the Indiana 'poor relief' statute. Ind.Code § 12--2--1--1 et seq. (1973). In May 1970, his rent and in February 1971 his food benefits were terminated without prior notice or hearing or notice of his right to an administrative appeal. Citing Goldberg, the Court held the termination to be unconstitutional for failure to provide a pretermination hearing, an opportunity for plaintiff to be heard and notice of the reasons for termination. 485 F.2d 385, 386. Accord Freitag v. Carter, 489 F.2d 1377, 1383--84 (7th Cir. 1973). The Court specifically dispelled the notion that any lesser due process standards applied to state as opposed to federal programs:'The Goldberg v. Kelly case involved a federally assisted program, not a completely state funded program. It is of no consequence constitutionally that Indiana's 'township poor relief program . . . is not a federally governed or directed program under the Social Security Act of 1935 or any other federal act of welfare or relief assistance' but is supported solely by the state. Indiana is required by the Fourteenth Amendment to provide due process in its laws.' 485 F.2d at 385.[8]
 
 
 16
 In Vargas v. Trainor, 508 F.2d 485 (7th Cir. 1974), cert. denied, 420 U.S. 1008, 95 S.Ct. 1454, 43 L.Ed.2d 767 (1975), the Court held that the Illinois Department of Public Aid's notice procedures to recipients were inadequate to pass the constitutional muster. The Department sent certain aged, blind and disabled recipients a written notice indicating that their assistance would be reduced 'because of changes in (their) needs or living arrangements . . ..' 508 F.2d at 487. The Court held that such notice was inadequate to satisfy due process requirements because it failed to inform the recipients of the specific reasons why their benefits were being reduced or terminated. The Court noted:
 
 
 17
 'Government agencies do make mistakes. Yet there is a human tendency . . . to assume that an action taken by a government agency in a pecuniary transaction is correct.' 508 F.2d at 490.[9]
 
 
 18
 In addition, due process requires that welfare assistance be administered to ensure fairness and freedom from arbitrary decision-making as to eligibility. Federally subsidized public assistance is governed by statute and extensive regulations. 42 U.S.C. §§ 301 et seq. 45 C.F.R. 205, 206. The Illinois Public Aid Department maintains specific regulations governing procedures and standards to determine eligibility. Cf. Ill.Rev.Stat., ch. 23, § 12--4.11; § 12--13; Illinois Public Aid Department Manual For General Assistance. Defendant Roughton is apparently not bound by the regulations of the Illinois Public Aid Department. Ill.Rev.Stat., ch. 23, § 12--3. Certain basic eligibility requirements, however, are provided in the General Assistance statute itself. Ill.Rev.Stat., ch. 23, §§ 6--1 et seq. Defendant Roughton as administrator of the general assistance program has the responsibility to administer the program to ensure the fair and consistent application of eligibility requirements. Fair and consistent application of such requirements requires that Roughton establish written standards and regulations. At the hearing in the district court on the preliminary injunction, defendant Roughton admitted that he and his staff determine eligibility based upon their own unwritten personal standards (T10). Such a procedure, vesting virtually unfettered discretion in Roughton and his staff, is clearly violative of due process. See Welfare Fighters Organization v. Center Township, 2 CCH Pov.L.Rep. P18,964 (S.D.Ind. April 30, 1974), also reported at 8 Clearinghouse Review 131 (June 1974); Holmes v. New York City Housing Authority, 398 F.2d 262, 265 (2d Cir. 1968); Hornsby v. Allen,326 F.2d 605, 610 (5th Cir. 1964); United States v. Atkins, 323 F.2d 733, 742 (5th Cir. 1963).
 
 III.
 
 19
 The district court erred by failing to consider the relevant evidence presented at the hearing on the preliminary injunction. Rather than directing its attention to the issue of whether plaintiffs' procedural due process rights were violated, the court made an independent determination as to whether plaintiffs were entitled to general assistance.[10] Since defendant Roughton admitted that his standards for granting relief were unwritten and arbitrary, the district court clearly based its decision as to plaintiffs' eligibility on the court's own personal standards (T107--109). The role of the district court in this instance is not to determine plaintiffs' eligibility for general assistance but rather it is to review the standards and actions of defendant Roughton to insure that they pass the constitutional test. Hornsby v. Allen, supra at 612.
 
 
 20
 Apparently the preliminary injunction was denied specifically because the district court did not believe that plaintiffs would prevail on the merits as to their eligibility. See 11 Wright & Miller, Fed. Practice & Procedure, § 2948, at 431 (1973). At issue, however, was whether plaintiffs' procedural due process rights were violated by the method by which they were denied general assistance. Overwhelming evidence was presented--sufficient to support a preliminary injunction--that plaintiffs would ultimately succeed on the merits of this issue. Milsen Co. v. Southland Corp., 454 F.2d 363, 369 (7th Cir. 1971); Henry v. Greenville Airport Comm'n, 284 F.2d 631, 633 (4th Cir. 1960); Clemons v. Board of Education, 228 F.2d 853, 857 (6th Cir.), cert. denied, 350 U.S. 1006, 76 S.Ct. 651, 100 L.Ed. 868 (1956).
 
 
 21
 We cannot agree with the defendants that the hearing in the district court provided plaintiffs with sufficient due process. The requirements of due process include a determination of the issues according to articulated standards. The lack of such standards in this case deprives any hearing, whether before an agency or a court, of its meaning and value as an opportunity for the plaintiffs to prove their qualifications for assistance. Holmes v. New York City Housing Authority, supra, 398 F.2d at 265; Hornsby v. Allen, supra, 326 F.2d at 610.
 
 
 22
 The district court's order is reversed as to plaintiffs White and Walker and their claims are remanded to the district court with directions to enter a preliminary injunction ordering the defendant Roughton to continue paying general assistance benefits to plaintiffs White and Walker. As to plaintiff Silagy, the denial of the preliminary injunction is reversed and her claim is remanded to the district court to reconsider, in light of this opinion, the issue of whether she was denied due process in her application for general assistance.[11]
 
 
 23
 Because of the significant constitutional rights involved, we are confident that Judge Wise will expedite this matter on his calendar. The district court should focus upon the development of written standards for eligibility and for the amount of general assistance which may be given. Further proper notice, hearing and appeal mechanisms[12] should be established.
 
 Reversed and remanded with directions.[13]
 
 
 *
 District Judge Richard W. McLaren of the Northern District of Illinois, sitting by designation. This decision was completed before the death of Judge McLaren. CH PER CURIAM
 
 
 [1]
 Illinois Public Aid Code, Article VI General Assistance, Ill.Rev.Stat., ch. 23 §§ 6--1 et seq
 
 
 [2]
 The issue of class relief is not properly before this court for final resolution because the district court has not yet made a determination as to whether a class action may be maintained. Fed.R.Civ.P. 23
 
 
 [3]
 'T' is used in this opinion to designate the transcript page numbers of the hearing on the petition for preliminary injunction held on December 20, 1974
 
 
 [4]
 Beginning on the following dates: 4--16--74; 9--5--74; 9--12--74; 9--23--74; 10--1--74
 
 
 [5]
 At the hearing on the preliminary injunction Roughton testified that his records did not show the reason for White's termination. Roughton suggested, however, that White had failed to bring in a statement from his doctor (T24--25)
 
 
 [6]
 Roughton testified at the hearing on the preliminary injunction that Walker was terminated because Roughton never received a statement from Walker's doctor confirming that he was still disabled from a work injury (T28)
 
 
 [7]
 Roughton testified that Silagy was denied general assistance in July 1974 because he and his staff could not understand her application and because she received assistance elsewhere. On a subsequent occasion when Silagy visited Roughton's office she was not given assistance. Roughton testified that she did not ask for assistance and that she had $80 in her pocket (T29--33)
 
 
 [8]
 The General Assistance welfare grants are clearly state action under Ill.Rev.Stat., ch. 23, §§ 6--1, et seq. Appellees argue that general assistance grants are on a single grant basis for a specific period of time and as such applicants and recipients do not have a sufficient interest to require that procedural due process be afforded to them. The principles of Goldberg v. Kelly are not, however, limited by the duration of the welfare grants. See Pregent v. New Hampshire Dept. of Employment Sec., 361 F.Supp. 782, 793--94 (D.N.H.1973), vacated and remanded on other grounds, 417 U.S. 903, 94 S.Ct. 2595, 41 L.Ed.2d 207 (1974). In any event, Article VI General Assistance under the Public Aid Code is not limited to grants on a single grant basis:
 ' § 6--1 Eligibility Requirements
 'Financial aid in meeting basic maintenance requirements for a livelihood compatible with health and well-being, plus any necessary treatment, care and supplies required because of illness or disability, shall be given under this Article . . ..
 ' § 6--2 Amount of Aid
 'The amount and nature of General Assistance for basic maintenance requirements shall be determined in accordance with local budget standards. Due regard shall be given to the requirements and the conditions existing in each case, and to the income, money contributions and other support and resources available, from whatever source. The grant shall be sufficient when added to all other income, money contributions and support in excess of any excluded income or resources, to provide the person with a livelihood compatible with health and well-being.
 
 
 [9]
 The court also stated:
 'We are not unmindful of the state's interest in making welfare payments only to those who are eligible to receive them and only in the proper amounts. The state has every right to terminate or reduce benefits when warranted by a change in a recipient's situation or discovery of an error of fact. We hold only that in making these adjustments the state must observe the requirements of due process.' 508 F.2d at 490.
 
 
 [10]
 The District Judge stated at the hearing that: (1) plaintiff White was receiving other aid, lived in a two-bedroom apartment by himself and had not shown anything demanding immediate relief; (2) plaintiff Silagy '. . . looks like a person that could go out and get a job most anytime she desired'; (3) plaintiff Walker had moved from Champaign township to Urbana and that from the Judge's own observation he looked as if he had recovered from a hand injury (T107--109). Even if the district court were the proper forum to determine eligibility, part of the District Judge's reasoning regarding Walker was faulty. Ill.Rev.Stat. ch. 23, § 6--1.1 provides that if a person who is a resident of the state moves from one governmental unit to another:
 '. . . the governmental unit in which he last so resided shall be charged with providing the necessary aid until the person has resided in the governmental unit to which he has moved for a continuous period of 6 months.'
 
 
 [11]
 The district court should determine what sort of procedures due process requires be afforded to applicants. Such procedures might include requiring written reasons for denial, applied under written standards of eligibility, as well as requiring a mechanism for orderly appeal. See Alexander v. Silverman, 356 F.Supp. 1179 (E.D.Wis.1973)
 
 
 [12]
 The district court should eventually formulate any necessary injunctive relief to assure that defendant Schwengel administers appeals in keeping with the requirements of procedural due process
 
 
 [13]
 The district court is directed to determine, according to Fed.R.Civ.P. 23, whether the case can properly proceed as a class action