Rene **SOCKWELL** et al., **Plaintiffs,**

v.

Francis **MALONEY** et al., **Defendants.**

**Civ. No. N–76–200.**

United States District Court, D. Connecticut.

Nov. 26, 1976.

Alice M. Leonard, New Haven Legal Assistance, Edward Mattison, Technical Assistance Project, New Haven, Conn., for plaintiff.

Francis J. Mac Gregor, Asst. Atty. Gen., Hartford, Conn., for defendants.

## RULING ON PLAINTIFFS' MOTIONS FOR CLASS CERTIFICATION AND FOR PRELIMINARY INJUNCTION

ZAMPANO, District Judge.

Plaintiffs are four minor children who reside with their great aunt and received foster care payments from the State of Connecticut from April 1973 until May

1976. In this civil rights action, 42 U.S.C. § 1983, seeking declaratory and injunctive relief, they challenge, on constitutional and statutory grounds, the refusal of defendant Commissioners to afford them written notice and a hearing before terminating their foster care and social service benefits.

In a three-count complaint they charge that 1) the failure to provide meaningful notice of the grounds for termination and a pretermination hearing deprives them of due process; 2) defendant Maloney has violated Title IV–A of the Social Security Act, 42 U.S.C. § 601 *et seq.,* and the regulations thereunder, 45 C.F.R. § 205.10,[1] which require written notice and a hearing before termination of foster care benefits provided by a state operating under a Title IV–A plan; and 3) defendant Maher has violated Title XX of the Social Security Act, 42 U.S.C. § 1397 *et seq.,* and the regulations thereunder, 45 C.F.R. § 228.14,[2] which require written notice and a hearing before termination of social services provided by the state under Title XX. Jurisdiction is premised on 28 U.S.C. §§ 1331, 1343(3) and (4), and 28 U.S.C. §§ 2201, 2202. Plaintiffs now move for the certification of a class and a preliminary injunction.

**I**

The material facts are rather unique but not in dispute. In April 1973, the plaintiffs went to live with their great aunt under the Non-Committed Child Program of the Connecticut State Welfare Department, see Conn.Gen.Stat. § 17–32(b), when their natural father voluntarily agreed to this placement until the family could be reunited. Under this program, the children received state-funded foster care payments and protective services. In May 1974, after neglect petitions had been filed by the Commissioner of Welfare, *Id.* § 17–62, the Juvenile Court adjudged the children "homeless" and committed them to the custody of the Commissioner. They continued to live with their aunt, but were now eligible for the AFDC-Foster Care program, 42 U.S.C. § 608(a), which provides federal reimbursement for payments made under a state plan when a dependent child has been judicially committed to a state agency for foster care.[3]

However, on December 3, 1975, the judicial commitment of the children was revoked after a judge of the Superior Court found that they were not "uncared for."

---

1. 45 C.R.F. § 205.10 states, in part:
 (a) *State plan requirements.* A State plan under title I, IV–A, X, XIV, XVI or XIX of the Social Security Act shall provide for a system of hearings under which:

 (4) In cases of intended action to discontinue, terminate, suspend or reduce assistance:
 (i) The State or local agency shall give timely and adequate notice . . . .. Under this requirement:
 (A) "Timely" means that the notice is mailed at least 10 days before the date of action, that is, the date upon which the action would become effective.
 (B) "Adequate" means a written notice that includes a statement of what action the agency intends to take, the reasons for the intended agency action, the specific regulations supporting such action, explanation of the individual's right to request an evidentiary hearing (if provided) and a State's agency hearing, and the circumstances under which assistance is continued if a hearing is requested; . . .

 (5) An opportunity for a hearing shall be granted to . . . any recipient who is aggrieved by an agency action resulting in suspension, reduction, discontinuance or termination of assistance. . . .

 (6) If the recipient requests a hearing within the timely notice period:
 (i) Assistance shall not be suspended, reduced, discontinued or terminated, (but is subject to recovery by the agency if its action is sustained), until the decision is rendered after a hearing . . .

2. 45 C.F.R. § 228.14 provides:
 "The State plan shall provide for a system of hearings under which applicants for, or recipients of, services or an individual acting on behalf of an applicant or recipient, may appeal denial, reduction or termination of a service, or failure to act upon a request for service with reasonable promptness. Under this requirement, the procedures and provisions of 45 C.F.R. 205.10 shall apply.

3. Although plaintiffs were eligible for the AFDC-Foster Care program, the State never received federal reimbursement because officials of the Department of Children and Youth Services failed to submit vouchers for the foster care payments.

No action was taken by the Department of Children and Youth Services to return the children to their natural parents or to re-commit them on the ground that they were neglected or abandoned in fact. Instead, the children continued to reside with their aunt and to receive foster care payments from the state. In addition, as of October 15, 1975, they received social services from the state which were funded, in large part, by the federal government under Title XX of the Social Security Act, 42 U.S.C. § 1397 *et seq.*

On April 1, 1976, both the federally-funded social services and state-funded foster care benefits were terminated, effective May 15, 1976, without prior written notice or explanation of the grounds for termination, or an opportunity for a hearing. Because plaintiff aunt is a sufficiently close blood relative, she was eligible for assistance under the Aid for Families with Dependent Children program, see 42 U.S.C. § 606(a), for her care of the children, which she applied for and began receiving on May 15.[4]

On June 14, 1976, plaintiffs filed the instant action claiming that they were entitled to written notice and a hearing before the state terminated their foster care payments. The Court held a hearing on June 18 on plaintiffs' motion for a temporary restraining order and denied the motion. At that time, the attorney for defendant Commissioners conceded that 1) if the foster care payments received by plaintiffs had been paid with federal matching funds, they would have been entitled to notice and a hearing before termination pursuant to 45 C.F.R. § 205.10; and 2) that the state had no procedures for providing any notice or hearing in conjunction with the termination or reduction of wholly state-funded foster care payments.

However, at the suggestion of the Court, defendants agreed to afford plaintiffs a fair hearing on the determination of their foster care benefits pursuant to Conn.Gen.Stat. § 17–2a. The hearing was held on June 21, at which time the hearing examiner upheld the decision to discontinue foster care payments and services to the children under Title XX from the Department of Children and Youth Services. The Court held another hearing on July 7 with respect to plaintiffs' motion for class certification and for a preliminary injunction. Comprehensive briefs have now been filed.

## II

Plaintiffs seek certification of a class of "all present and future foster children whose foster care benefits or Title XX social services are, or will be, discontinued, terminated, suspended, or reduced by the State of Connecticut." The defendants, on the other hand, seek to limit the class of potential plaintiffs to foster care children whose judicial commitment has been revoked by the Superior Court on a finding that they are not "uncared for" and who are living with a blood relative, thereby qualifying them for AFDC assistance under 42 U.S.C. § 606(a).

The Court is satisfied that certification of the class requested by plaintiff should be granted. The prerequisites of Rule 23(a), F.R.Civ.P., concerning the size of the class proposed and the typicality of claims have been met. Regardless of the manner of termination and the fortuitous availability of AFDC assistance in the instant case, which makes the harmful effects of summary termination less pronounced, the central fact remains that plaintiffs' foster care benefits were terminated without prior written notice or a hearing giving rise to their legal claim. Moreover, the defendants' intention to persist in their practice of not affording foster care children notice and a hearing before terminating benefits makes injunctive relief for the class of foster care children appropriate. See Rule 23(b)(2), F.R. Civ.P.; cf. *Lugo v. Dumpson,* 390 F.Supp. 379, 381 (S.D.N.Y.1975). The Court is con-

---

**4.** *Under the foster care program, the plaintiffs' aunt received $133 per child each month for three of the children and $128 each month for the fourth, for a total of $527 each month.* Now, under AFDC, the four children receive a total of $216, which has been added to their aunt's prior grant. Their monthly loss is $311.00.

vinced that plaintiffs, ably assisted by counsel, will fairly and adequately protect the interests of the class. See *Lyons v. Weinberger,* 376 F.Supp. 248 (S.D.N.Y.1974). Accordingly, the plaintiffs' motion to certify a class of foster care children is granted.[5]

### III

On the issue of preliminary injunctive relief, the plaintiffs, relying principally on *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), contend that they have a property interest in state foster care benefits granted to children in need of care and protection from the state, see Conn.Gen.Stat. § 17–32; and therefore, they are entitled to due process to protect that interest. Cf. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *White v. Roughton,* 530 F.2d 750 (7 Cir. 1976); *Frost v. Weinberger,* 515 F.2d 57 (2 Cir. 1975), cert. denied, 424 U.S. 958, 96 S.Ct. 1435, 47 L.Ed.2d 364 (1976). Moreover, they argue that the oversight of state officials in neglecting to request federal reimbursement for foster care payments to plaintiffs cannot excuse defendants' failure to afford them the due process to which they would otherwise have been entitled pursuant to 45 C.F.R. § 205.10. In addition, witnesses for the plaintiffs testified that the loss of foster care benefits would create financial hardship for plaintiff aunt and cause them irreparable emotional and psychological harm. As to the class, the plaintiffs submit that the summary termination of foster care benefits would clearly result in harm to children who are awarded those benefits after a finding by the defendant Commissioner of Children and Youth Services that they are in need of care and protection from the state.

Defendants, on the other hand, assert that plaintiffs have no right to notice or a hearing before state-funded foster care payments are terminated. Relying on the facts of this particular case, they claim that because AFDC benefits were granted at the same time that foster care benefits were terminated, the plaintiffs cannot show the "brutal need" or "deprivation of the very means by which to live" which *Goldberg* requires before due process safeguards are warranted. See *Mathews v. Eldridge,* supra. Moreover, the defendants urge that, because the plaintiff children's termination from foster care benefits and Title XX services was mandated by a decision of the Superior Court to revoke their judicial commitment, there was no need for a pretermination evidentiary hearing to resolve issues of fact or credibility. See *Goldberg v. Kelly,* supra; cf. 45 C.F.R. § 205.10(a)(5).[6] Finally, defendants argue that plaintiffs have failed to make a showing of irreparable harm by pointing out that: 1) foster care payments were terminated only after the plaintiffs' aunt applied for and was granted increased AFDC assistance; see 45 C.F.R. §§ 220.19(d), 233.110(a)(2); 2) the level of benefits received by the aunt for herself, her daughter, and plaintiffs is as high as any other family of six under the AFDC program in the New Haven area; 3) plaintiffs are eligible for food stamps, Medicaid assistance, and, upon request, protective services from the Department of Children and Youth Services; 4) plaintiffs have no right to a particular level of welfare benefits, see *Rosado v. Wyman,* 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); and 5) the fact that AFDC assistance is less generous than foster care grants does not in and of itself constitute irreparable harm.

 It is well-established that a preliminary injunction will issue "only upon a

---

5. Because the plaintiff class is being certified under Rule 23(b)(2) the mandatory notice provision of Rule 23(c)(2) does not apply. See *Frost v. Weinberger,* 515 F.2d 57, 65 (2 Cir. 1975), cert. denied, 424 U.S. 958, 96 S.Ct. 1435, 47 L.Ed.2d 364 (1976); *Mattern v. Weinberger,* 519 F.2d 150, 158 (3 Cir. 1975); *Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, 254–57 (3 Cir. 1975).

6. 45 C.F.R. § 205.10(a)(5) reads, in part:

"... a hearing need not be granted when either State or Federal law require automatic grant adjustments for classes of recipients unless the reason for an individual appeal is incorrect grant computation."

clear showing of either 1) probable success on the merits *and* possible irreparable injury, *or* 2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Sonesta Int'l Hotels Corp. v. Wellington Associates,* 483 F.2d 247, 250 (2 Cir. 1973) (emphasis in original); see also *Brown v. Chote,* 411 U.S. 452, 456, 93 S.Ct. 1732, 36 L.Ed.2d 420 (1973); *San Filippo v. United Bro. of Carpenters & Joiners,* 525 F.2d 508, 511 (2 Cir. 1975); *Robert W. Stark, Jr., Inc. v. New York Stock Exchange,* 466 F.2d 743, 744 (2 Cir. 1972); *Checker Motors Corporation v. Chrysler Corporation,* 405 F.2d 319, 323 (2 Cir.) cert. denied, 394 U.S. 999, 89 S.Ct. 1595, 22 L.Ed.2d 777 (1969). On the present record, the plaintiffs have satisfied these standards.

It is uncontroverted that the care, welfare and protection of the plaintiff children are the responsibility of the defendants. The benefits accorded these children, in the form of foster care payments to the plaintiff aunt were extended by the defendants through May 15, 1976, notwithstanding the ruling of the Superior Court in December, 1975.[7] Recognizing that the children were thriving in the aunt's home, the defendants neither made an attempt nor expressed a desire to have them returned to their natural parents. However, rather than continuing foster care payments from state funds, as the children had received before the Juvenile Court commitment in May 1974, the defendants terminated foster care payments and advised the plaintiff aunt to apply for AFDC assistance. See 45 C.F.R. §§ 220.19, 233.110(a)(2). This "bait and

switch"-type activity had the effect of reducing the children's benefit level without explanation or opportunity to contest it.

Such unexplained manipulation of plaintiffs' welfare benefits should not be countenanced. Counsel for defendants has conceded that federal statutes and regulations require written notice and a hearing prior to reduction or termination of AFDC-Foster Care payments or social services rendered under Title XX. See 45 C.F.R. §§ 205.10, 228.14. The argument that such process is not required because the termination of AFDC-Foster Care payments is automatic when judicial commitment is revoked is without merit. The relevant regulation, 45 C.F.R. § 205.10(a)(5), refers to changes in state or federal law which affect classes of recipients and not to judicial determinations made on an individualized basis.[8] In addition, the regulation refers specifically to "automatic grant adjustments" and not to termination of benefits. Since the regulations expressly exempt this one circumstance in which a hearing before grant adjustments is not required, the Court infers that a hearing before reduction or termination is required in all other situations. Therefore, the Court finds that neither AFDC-Foster Care payments or Title XX social services should have been terminated by defendants until plaintiffs had been accorded the procedural protections of 45 C.F.R. § 205.10(a).

It is true that although plaintiffs were eligible for AFDC-Foster Care, all payments were made with state funds; and therefore, with respect to foster care payments, there was no program participation to which the procedural safeguards of 45 C.F.R. § 205.10(a) could attach. However,

---

**7.** Whether the children's foster care benefits after December 1975, came from federal or state funds, they caused plaintiff aunt to rely on their indefinite continuance. From April 1973 until May 1974, the plaintiff children had received foster care benefits under a voluntary program. When judicial commitment was revoked, but the children remained with the aunt, and payments continued, plaintiff aunt properly assumed that benefits were again being received under the Non-Committed Child Program. She was never informed by defendants

that this was not the case and that payments would only continue until she could apply for increased AFDC assistance.

**8.** Moreover, even in cases of automatic grant adjustments in which a hearing before reduction is not required, the regulations provide for notice and a statement of reasons for the change ten days before the effective date of the action. 45 C.F.R. § 205.10(a)(4)(iii). In this case, defendants failed to afford plaintiffs even this minimal due process safeguard.

this fact does not alter the Court's conclusion that state funded foster care benefits cannot be reduced or terminated without written notice and a hearing. Foster care benefits are awarded by the state on the basis of a child's financial need after a finding by the Commissioner of Children and Youth Services that care and protection by the state is necessary. Conn.Gen.Stat. § 17–32(b). The foster parents, and thus, the foster child, depend on this award to provide for basic daily needs. A reduction or termination of foster care payments surely results in hardship for the foster child. The foster parent may even be unwilling to support the child under these circumstances and the child may be returned to the state. Therefore, once a child is found in need of foster care and is placed in a foster home, the child acquires a property interest in foster care payments protected by the due process clause of the Fourteenth Amendment. See *Goldberg v. Kelly,* supra; cf. *Mathews v. Eldridge,* supra; *Frost v. Weinberger,* supra. Any decision to terminate or reduce foster care payments may involve matters of credibility and veracity concerning the willingness of the foster parent to support the child, the financial condition of the child, and whether the child is still "at risk" or "neglected" and in need of foster care. Such issues are best resolved at a hearing. See *Goldberg v. Kelly,* supra, *Lee v. Thornton,* 538 F.2d 27 at 32 n.4 (2 Cir. 1976), *White v. Roughton,* supra.

The irreparable harm that may arise from the summary deprivation of this property interest is clear. Foster children depend on foster care payments for their living essentials. Foster parents obligate themselves to care for these children on the assurance that they will receive support from the state. The reduction or termination of payments undoubtedly places a strain on the foster parent/foster child relationship. As a consequence, the child psychologically may feel less wanted and insecure in the foster home.

The proof in the instant case revealed that the change from foster care to AFDC assistance resulted in the plaintiff children receiving over $300 a month less in financial aid. While not causing the children to be deprived of essential food, clothing, and shelter, this loss has materially affected their well-being. Their aunt testified that she is unable to buy them new clothes or to send them on school trips or summer vacations. Her dire financial condition is reflected in the children's growing sense of dissatisfaction and insecurity in the home. Several of the children have had to make more frequent visits to their psychiatrist and have become less able to deal with stressful situations in school and at home. Moreover, the children have lost the services of a social worker assigned to work with them on a regular basis.

The harm to the named plaintiffs and deprivations to other members of the class appear to be severe. As the Court said in *Goldberg,* "the interest of the eligible recipient in uninterrupted receipt of public assistance, coupled with the State's interest that his payments not be erroneously terminated, clearly outweighs the State's competing concern to prevent any increase in fiscal and administrative burdens." 397 U.S. at 266, 90 S.Ct. at 1019; see also *Mattern v. Weinberger,* 519 F.2d 150 (3 Cir. 1975); cf. *Frost v. Weinberger,* supra. Therefore, the Court finds that plaintiffs have shown a probable likelihood of success on the merits and irreparable harm to themselves and the plaintiff class sufficient to warrant preliminary injunctive relief.

■ The procedures for notice and hearing set forth in the federal regulations, 45 C.F.R. § 205.10, are illustrative of the process due recipients of foster care upon reduction or termination of benefits. The Court concludes that due process in this context requires an opportunity for a hearing before agency action which provides the following safeguards:

1) timely and adequate notice to the foster parents of the reasons for reduction or termination;

2) an opportunity to confront and cross-examine adverse witnesses;

3) an opportunity to present their own evidence and arguments;

4) an opportunity to retain counsel or have the assistance of a friend, if the foster parents desire;

5) an impartial decision-maker;

6) a written statement of the decision which gives reasons and a summary of the evidence relied on;

Accordingly, the plaintiffs' motions for class certification and a preliminary injunction are granted. The Court hereby orders that defendants are restrained from:

1) failing and refusing to reinstate the named plaintiffs as recipients of foster care benefits and social services until they are provided with legally sufficient notice and a hearing as described above;

2) reducing or terminating foster care benefits to members of the plaintiff class until they are provided with notice and a hearing as set forth above;

3) reducing or terminating social services to members of the plaintiff class who are recipients of social services under Title XX of the Social Security Act, 42 U.S.C. § 1397, without prior notice and an opportunity to be heard which satisfy the requirements of 45 C.F.R. § 228.14 as specified in 42 C.F.R. § 205.10.

SO ORDERED.