**NOA EMMETT ALULI, M.D.; KARL KIRKENDALL; MICHAEL LAPLANTE; ROBERT PETRICCI; STEVEN M. MOSER, M.D.; PELE DEFENSE FUND,** a Hawaii non–profit corporation, Plaintiffs–Appellants, v. **JOHN C. LEWIN, M.D.,** in his capacity as Director of Health; **STATE OF HAWAII, DEPARTMENT OF HEALTH, TRUE GEOTHERMAL ENERGY COMPANY,** a Wyoming general partnership registered to do business in the State of Hawaii, Defendants–Appellees

NO. 14815

(CIV. NO. 89–358)

MARCH 18, 1992

LUM, C.J., HAYASHI, WAKATSUKI, AND MOON, JJ., AND INTERMEDIATE COURT OF APPEALS JUDGE HEEN, IN PLACE OF PADGETT, J., RECUSED

OPINION OF THE COURT BY WAKATSUKI, J.

The appellants filed a complaint in the circuit court seeking declaratory and injunctive relief. Essentially, appellants sought cessation of construction and operations of geothermal wells along a segment of the Kilauea Middle East Rift Zone. The complaint was brought against True/Mid–Pacific Geothermal Venture (True) which was developing the wells and against the State Department of Health (DOH) which issued an air pollution permit authorizing the construction and operation of the wells.

Among other things, appellants contended that DOH erred in issuing the permit when there were no rules promulgated in accordance with the Hawaii Administrative Procedures Act, Chapter 91, Hawaii Revised Statutes (HRS), governing the issuance of such permits. The circuit court ruled that such administrative rules were unnecessary and denied appellants' claim for relief. We reverse.

I.

It is undisputed that geothermal wells emit hydrogen sulfide ($H_2S$) into the air. Pursuant to HRS § 342B–32, True submitted an application to DOH for issuance of an air pollution permit in conjunction with the construction and operation of twelve geothermal exploratory and developmental wells along a segment of the Kilauea Middle East Rift Zone.

HRS § 342B–32 (Supp. 1991),[1] in pertinent part, states:

> The director [of health] may require private persons or agencies or governmental agencies engaged or desiring to engage in operations which result or may result in air pollution to secure a permit prior to installation or operation or continued operation. The director shall refuse to issue the permit unless it appears that the operations would be in compliance with the rules of the department and the state ambient air quality standards.

On September 20, 1989, an Authority To Construct (ATC) permit was issued to True by DOH. At that time, DOH had no rules governing the emission of $H_2S$ into the air nor had the federal government adopted state ambient air quality standards for $H_2S$. DOH had been in the process of developing proposed rules governing $H_2S$ emissions but none had been adopted. It is obvious that both True and DOH believed that emission of $H_2S$ from the geothermal wells may result in air pollution since a permit was sought and issued.

---

[1] At the time True submitted its application, HRS § 342–22 (1985) was in effect. In pertinent part, it provided:

> In addition to any other power or duty prescribed by law in this part, the director shall prevent, control, and abate air pollution in the State. In the discharge of this duty, the director may:
>
> . . . .
>
> (3) Require private persons or agencies or governmental agencies engaged or desiring to engage in operations which result or may result in air pollution to secure a permit prior to installation or operation or continued operation. The director shall refuse to issue the permit unless it appears that the operations would be in compliance with the rules and regulations of the department and the state ambient air quality standards.

§ 342–22 was repealed in 1989 and replaced by § 342B–32 which was in effect when the permit was finally issued. For purposes of this appeal, there are no substantive differences in the two sections.

Finding itself in the anomalous situation of needing to regulate the construction and operation of geothermal wells, but having no regulatory guidelines, DOH's response to True's application was to issue a permit subject to 26 special conditions. Six of these conditions regulated the emission of $H_2S$. In essence, these were the "rules" and ambient air quality standards for $H_2S$. Such "rulemaking" is clearly not in compliance with the Hawaii Administrative Procedures Act.

DOH argues that rulemaking requirements are not applicable because the conditions only apply to True's permit, and that the conditions do not affect any future applications for air pollution permits. DOH's argument logically means that it can set different rules and standards for each permit application and that it has an unbridled discretion in issuing permits.

> [W]here the subject matter of a quasi–judicial adjudication encompasses concerns that transcend those of individual litigants and implicates matters of administrative policy, rulemaking procedures should be followed. [ ] These procedural requirements ensure fairness by providing public notice, an opportunity for all interested parties to be heard, full factual development and the opportunity for continuing comment on the proposed action before a final determination is made.

*613 Corp. v. New Jersey Div. of State Lottery*, 210 N.J. Super. at ___, 510 A.2d 103, 110 (N.J. Super. A.D. 1986).

## II.

Setting emission standards for air pollutants does not involve merely a scientific assessment, but a balancing of interests. *See Environmental Defense Fund, Inc. v. Ruckelshaus*, 439 F.2d 584, 594 (D.C. Cir. 1971). Air quality is an integral part of the quality of life and the public should have input in the matter. The

language of HRS § 342B–32 provides for permit issuance in accordance with rules which indicates that the legislature envisioned public input into these matters.

Issuance of the permit which allowed True to emit certain amounts of $H_2S$ into the air had "a prospective and public impact that transcend[ed] the immediate interests of the actual parties whose rights were purportedly adjudicated in [the permit] proceedings." *Crema v. New Jersey Dep't of Envtl. Protection*, 94 N.J. 286, \_\_\_, 463 A.2d 910, 918 (1983).

When an agency is accorded unbridled discretion in issuing permits as here,

> the affected public cannot fairly anticipate or address the procedure as there is no specific provision in the statute or regulations which describe the determination process. The public and interested parties are without any firm knowledge of the factors that the agency would deem relevant and influential in its ultimate decision. The public has been afforded no meaningful opportunity to shape these criteria which affect their interest.

*613 Corp.*, 210 N.J. Super. at \_\_\_, 510 A.2d at 112; *see also Crema*, 94 N.J. at \_\_\_, 463 A.2d at 918.

The fact that the appellants in this case had an opportunity to present their views before the circuit court at trial is clearly not an adequate substitute for the rulemaking process required under HRS § 342B–32. The appellants comprise a small portion of the public. Others may have been interested in providing input in the matter but may not have been able to intervene in this lawsuit due to a lack of notice or resources. Moreover, fairness to the public and potential applicants for air pollution permits dictates that the rules adopted by DOH be known beforehand. This will enable one to plan and make decisions with certainty.

The circuit court in this case, sitting as the trier of fact, listened to the litigants' evidence of what effect various amounts of $H_2S$

would have on air quality. It then determined that the amounts established by the conditional permit issued to True were sufficiently protective of the environment. In doing this, the trial judge imposed his personal standards of what the air quality should be. *See White v. Roughton*, 530 F.2d 750, 754 (7th Cir. 1976). This is not the role of the trial court.

## III.

This case was initiated by public activists; therefore, the focus is on the lack of input by the general public in a matter of public concern. However, the unbridled discretion exhibited by DOH also raises the issue of fairness and possibly constitutional due process rights with regard to future applicants for air pollution permits regarding $H_2S$ emission into the air.

Future applicants will have no official source to turn to for guidance. There will be no avenue to predict DOH's actions in permit application procedures. Without established written standards by rules, no one can know whether permit applications will be reviewed fairly and consistently and whether considerations to grant or deny a permit will serve the purpose of the statute or are unlawful (e.g., bribes, race discrimination). *See 613 Corp.*, 210 N.J. Super. at ___, 510 A.2d at 112; *Crema*, 94 N.J. at ___, 463 A.2d at 918; *White v. Roughton*, 530 F.2d at 753–54; *Gonzalez v. Freeman*, 334 F.2d 570, 578 (D.C. Cir. 1964).

There will be no public confidence in such a system. "Such a system breeds suspicion and fosters contempt and corruption." *613 Corp.*, 210 N.J. Super. at ___, 510 A.2d at 113. As the U.S. Supreme Court recognized:

"[W]here . . . there are no standards governing the exercise of discretion granted . . . the scheme permits and encourages an arbitrary and discriminatory enforcement of the law.

*Papachristou v. City of Jacksonville*, 405 U.S. 156, 170 (1972).

## IV.

HRS § 342B–32 authorizes issuance of a permit in accordance with rules. Rules are necessary to ensure fairness and to minimize unbridled use of discretion of an agency.

In the absence of rules governing the standards of emissions of $H_2S$ into the air, DOH was required to refuse the issuance of the ATC permit to True pursuant to HRS § 342B–32.

The order of the circuit court is reversed and this case is remanded for the issuance of injunctive relief ordering True to stop any action based on the ATC permit which allows construction that would emit $H_2S$ into the air, and for the issuance of an order requiring DOH to promulgate rules consistent with this opinion governing $H_2S$ emissions into the air.

*Anthony L. Ranken* for Plaintiffs–Appellants.

*Gary B.K.T. Lee* (*Stephanie A. Rezents* and *Jason M. Yoshida* with him on the briefs of Matsubara, Lee & Kotake, A Law Corporation) for Defendant–Appellee True Geothermal Energy Co.

*John C. Wong* (*Sonia Faust* and *Michael Azama* with him on the briefs), Deputy Attorneys General, for Defendants–Appellees John C. Lewin, M.D., the State of Hawaii, Department of Health.