SILBERMAN, Senior Circuit Judge,
concurring.
I write separately to comment more fully on the district court’s disposition of claim six — the due process claim. Although the court purported to decide only that claim — that due process required more specific written and published guidelines governing termination procedures, and not that the procedures actually em *400 ployed were inadequate — the court’s opinion clearly intermixed both contentions.
Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), sets forth a framework to be utilized in judging the adequacy of a government’s procedures that deprive a person of life, liberty, or property.[1] Typically, the focus is on whether the government — in the latter two categories — must provide a pre-deprivation hearing and, if so, how formal. See, e.g., id. at 323, 96 S.Ct. 893; Wilkinson v. Austin, 545 U.S. 209, 125 S.Ct. 2384, 2388, 162 L.Ed.2d 174 (2005). In Mathews itself, the Supreme Court sanctioned a rather informal pre-deprivation “hearing” for the discontinuation of Social Security disability payments, one that involved only a claimant’s opportunity to examine his or her file and respond in writing with additional evidence supporting the continuation of benefits. See 424 U.S. at 345-46, 96 S.Ct. 893.
The district court, despite its explicit application of Mathews v. Eldridge in its first decision denying an injunction, accepted appellees’ argument that in considering claim six, Mathews was not relevant. Instead, as we noted, the court proceeded essentially as if it were reviewing federal agency action under the APA. Its analysis started with the proposition that “[cjourts should require administrative officers to articulate the standards and principles that govern their discretionary decisions in as much detail as possible,” quoting one of our old administrative law cases, Environmental Defense Fund, Inc. v. Ruckelshaus, 439 F.2d 584, 598 (D.C.Cir.1971). That may well be an overly broad statement of judicial review, even under the APA, and inconsistent with our more modest jurisprudence in subsequent decades. See, e.g., PDK Labs. Inc. v. DEA, 438 F.3d 1184, 1194 (D.C.Cir.2006) (rejecting the proposition that - “an unarticulated standard does not comport with ... the APA” and observing that an agency need only “pour some definitional content into a vague statutory term by defining the criteria it is applying”). But in any event, Ruckelshaus and the other case the court cited for this general proposition, Matlovich v. Secretary of the Air Force, 591 F.2d 852, 857 n. 11 (D.C.Cir.1978), were strictly APA cases; constitutional due process was not even mentioned. Under the APA we, of course, have a broad charge to ensure the reasonableness of agency action — setting it aside when arbitrary and capricious, see 5 U.S.C. § 706(2)(A) — but this is not an APA case.
The district court thought to import the APA scope of review into this § 1983 due process suit by relying on two rather old circuit court cases: White v. Roughton, 530 F.2d 750 (7th Cir.1976), and Holmes v. New York City Housing Authority, 398 F.2d 262 (2d Cir.1968). See also Peter L. Strauss et al., Gellhom and Byse’s Administrative Law 833 (10th ed.2003). These cases do stand for the proposition that when a government agency is given authority to dispense benefits (in White it was general assistance grants, and in Holmes it was low-rent public housing) to applicants- — no one of which has a particular statutory entitlement — the agency must do so in accordance with ascertainable standards in accordance with due process. It should be noted, however, that the Supreme Court has never adopted the notion that an applicant for public benefits — even one with a claim of entitlement under a statute — has a threshold property *401 interest triggering due process analysis. See Walters v. Nat’l Ass’n of Radiation Survivors, 473 U.S. 305, 321 n. 8, 105 S.Ct. 3180, 87 L.Ed.2d 220 (1985). Moreover, these cases did not apply the Mathews v. Eldridge framework because Holmes preceded Mathews by almost eight years and White issued only three days after Mathews.
Appellees, therefore, are quite incorrect in asserting that cases raising the sort of due process issue alleged in claim six are somehow to be analyzed outside of Mathews v. Eldridge — an assertion the district court seemed to accept. The Supreme Court has repeatedly insisted that procedural due process claims be measured in accordance with Mathews. See, e.g., Hamdi v. Rumsfeld, 542 U.S. 507, 528, 124 S.Ct. 2633, 159 L.Ed.2d 578 (2004) (plurality opinion) (describing the Mathews test as the “ordinary mechanism” for due process challenges); Parham v. J.R., 442 U.S. 584, 599, 99 S.Ct. 2493, 61.L.Ed.2d 101 (1979) (describing the Mathews test as the “general approach” for such cases).
It is quite understandable that appellees and the district court would see the Holmes and White cases as somehow outside the Matheios v. Eldridge framework because the truth is that neither case is a proper interpretation of the Due Process Clause. Their focus, as is that of appel-lees’ claim six, is not on process but on substance. Yet the Supreme Court’s due process jurisprudence carefully distinguishes process from substance. The issue is always, in its due process cases, whether or not the claimant has had a fair opportunity — sometimes rather informal— to present his case and not whether the agency’s substantive decision was reasonable. To be sure, as we today recognize, if an agency refused to give any reason for an initial deprivation, it would be impossible for the claimant to present an argument that the agency’s decision was incorrect. So procedure is implicated. But that assuredly does not mean that the Due Process Clause can be used as a looming super-arbitrary-and-capricious standard governing the substantive decisions of an administrative agency no matter how much discretion the agency enjoys. The quality of an agency’s reasoning is decidedly not a process issue. See Motor Vehicle Mfrs. Ass’n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 50-51, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983).
Granted, some Supreme. Court justices in dissenting opinions have sought to expand due process analysis to include challenges to government substantive decisions. See, e.g., Bd. of Regents v. Roth, 408 U.S. 564, 588, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (Marshall, J., dissenting); cf. Walters, 473 U.S. at 369, 105 S.Ct. 3180 (Stevens, J., dissenting). But the Court has never accepted that effort to transform the Due Process Clause. In short, Holmes and White are not only irrelevant to this case, they were also wrongly decided and simply do not survive the Mathews v. Eldridge era.
The district court’s concern with the weight to be accorded an independent medical examiner’s opinion, as opposed to that of a beneficiary’s treating physician, is not a due process issue either, but rather a substantive question of compliance with the statute and perhaps the DCAPA.[2] This is a quite common substantive issue in the administration of disability and worker’s compensation statutes. See, e.g., *402 Nat’l Mining Ass’n v. Dep’t of Labor, 292 F.3d 849, 861 (D.C.Cir.2002) (discussing a “treating physician rule” promulgated, pursuant to the Black Lung Benefits Act). If a claimant were not entitled to present any evidence in support of his or her continuation of benefits prior to their termination, that would implicate due process. But if the Due Process Clause were to extend to an administrative agency’s determination as to how much weight is to be afforded to particular kinds of evidence, it would swallow much of administrative law — both state and federal.
Similarly, so long as the District made available the medical examiner’s report and identified the prognosis on which its change-of-condition determination was based — so that a claimant could adequately respond — 'that the District did not provide a quasi-judicial opinion hardly implicates due process. The Supreme Court has emphasized again and again that adequate pre-termination process does not require formality. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 545, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); Mathews, 424 U.S. at 343, 96 S.Ct. 893; Boddie v. Connecticut, 401 U.S. 371, 378, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). As to the District’s alleged failure to individually notify claimants of statutory procedural rights, I think that claim borders on the frivolous. The statute itself is quite adequate, if not the most desirable notice.
On the other hand, appellees’ claim that beneficiaries were not given an adequate pre-deprivation opportunity to respond to the initial adverse decision — at least in writing (presumably by submitting alternative medical opinions, as in Mathews)— does implicate due process. It must be kept in mind, however, that episodic failures of process do not make out a constitutional violation. The Supreme Court has repeatedly cautioned that in determining whether a government’s process is adequate under Mathews, we are to evaluate the run-of-the-mine cases and not every application. See Walters, 473 U.S. at 321, 105 S.Ct. 3180. In this regard, the only surviving issue I see is whether, as a factual matter and prior to the recent amendment of the D.C.Code, beneficiaries, as a matter of policy and normal practice, were given an opportunity to present their case — at least in writing — prior to actual termination of their benefits.[3] That would, of course, require that beneficiaries have access to their case files as well.[4] The District insists that, pursuant to its then-unwritten policy, benefits were not terminated until after beneficiaries’ requests for reconsideration had been addressed and rejected and that any deviations from this policy were isolated incidents. That factual issue remains to be resolved by the district court on remand, when it addresses claims one through five.
The district court’s broad preference for regulations governing the behavior of officials — employees of an independent contractor and government officials — has no basis in due process jurisprudence or, for that matter, in administrative law. See SEC v. Chenery Corp., 332 U.S. 194, 203, *403 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). The only real question remaining under the due process analysis is that which I have identified.
He ^ ❖ H* He He
The district court’s embrace of constitutional due process in order to restrict the discretion employed by administrative agencies is part and parcel of the disturbing judicial trend, which we have seen for many years, of using the Due Process Clause to pursue substantive outcomes. Much has been written of the Supreme Court’s invention of substantive due process (an oxymoron if there ever was one), and we have only recently seen our own court expand its admittedly unstable boundaries. See Abigail Alliance for Better Access to Developmental Drugs v. Eschenbach, 445 F.3d 470 (D.C.Cir.2006). Using the Due Process Clause to restrict agency substantive decisionmaking, rather than to protect a claimant’s process, might be thought “substantive due process-lite."[5]

. A court considers three factors: the private interest at issue; the risk of an erroneous deprivation through the actual procedures, and the probable value of additional procedural safeguards; and the government’s interest, including the burdens associated with additional procedural requirements. Mathews, 424 U.S. at 335, 96 S.Ct 893.

. Indeed, the D.C. Court of Appeals has spoken on numerous occasions of the preference for treating-physicians over independent medical examiners. Most recently, in Kralick v. Department of Employment Services, 842 A.2d 705, 711 (D.C.2004), the court addressed the exact program at issue in this case and reaffirmed the treating physician preference. See also Canlas v. Dep’t of Employment Servs., 723 A.2d 1210, 1211-12 (D.C.1999); Stewart v. *402 Dep’t of Employment Servs., 606 A.2d 1350, 1353 (D.C.1992).

. Even if the pre-termination procedures were deficient, prospective relief appears out of the question in light of the post-termination review procedures, the 2005 amendments to the CMPA, and the reissued emergency rules.

. Appellees contend that the District denied access to case files and in support cite the declaration of David Colodny, an attorney representing one beneficiary. That declaration merely identifies an instance in which he met resistance attempting to gain access to a client’s file, but where access was ultimately granted. This is quite insufficient to cast doubt on the District’s assertion that case file access was granted as a matter of policy.

. It should be recognized that turning process into substance is an all-too-human temptation on the part of judges who wish to ensure certain outcomes rather than merely regulate procedure. And using constitutional due process trumps legislative decisionmaking.