**Ada ROBINSON and Albert Robinson, Plaintiffs,**

v.

**James F. PALMER, et al., Defendants.**

**Civ. A. No. 85–1044.**

United States District Court, District of Columbia.

Feb. 4, 1986.

---

Michael G. Roberts, Jeffrey F. Lawrence, Billig, Sher & Jones, P.C., Washington, D.C., for plaintiffs; Arthur B. Spitzer, Elizabeth Symonds, American Civil Liberties Union Fund of the National Capitol Area, Washington, D.C., of counsel.

Beverly A. Lewis, Metcalfe C. King, Asst. Corp. Counsel, D.C., Correctional Litigation Section, Washington, D.C., for defendants.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge:

The underlying facts in this proceeding are reported in *Robinson v. Palmer*, 619 F.Supp. 344 (D.D.C.1985). The original complaint was a broadbased challenge by Albert Robinson, a prisoner at Lorton Reformatory, and his wife Ada, to the decision of the Director of the D.C. Department of Corrections ("Department") to suspend permanently Ada Robinson's visitation privileges at correctional facilities in the District. The defendants are Department Director James Palmer, Assistant Director James Freeman, and Administrator Salanda Whitfield.

In the earlier opinion, the Court dismissed the plaintiffs' First and Eighth amendment claims but held that a letter from the defendant Whitfield to Mrs. Robinson, advising her of a one-year suspension of visiting privileges, gave her a liberty interest in a temporary suspension.

Therefore, due process considerations required that a hearing be held before the suspension could be made permanent under a new policy announced 29 days before the one-year suspension was to expire. The Court reserved judgment on the plaintiffs' claim that the new policy was adopted in violation of the D.C. Administrative Procedure Act ("D.C. APA"), D.C.Code § 1–1501 *et seq.* (1981).

At the hearing required by the Court, Mrs. Robinson, her attorneys, and the defendants Palmer, Freeman and Whitfield were present. The Department was represented by Assistant D.C. Corporation Counsel Metcalfe King. After the hearing, Mrs. Robinson was informed by Director Palmer, in a letter dated September 3, 1985, that he had "determined that the suspension of [her] visitation at facilities operated by the ... Department ... will remain in effect."[1] Counsel for the Department submitted a report on the hearing and the parties filed post hearing memoranda and renewed motions for summary judgment on the remaining issues: the adequacy of the due process hearing and the D.C. APA claim. The Court has considered the pleadings and oral argument of counsel and *grants* the plaintiffs' motion for summary judgment; appropriate relief is provided in an accompanying order.

Plaintiffs ask the Court to overturn the Director's decision following the hearing, arguing that the Department presented no justification for retroactively applying the permanent suspension policy, either at the hearing or in the subsequent September 3, 1985 letter of the Director. They claim that the hearing disregarded fundamental elements of procedural due process and that the ultimate decision was arbitrary and irrational. The plaintiffs also renew their claim that the permanent suspension policy was promulgated in violation of the D.C. APA and therefore cannot lawfully be applied to Mrs. Robinson.

1. The letter is attached as Exhibit C to the Defendants' Report to the Court in Response to the

Order of August 18, 1985, as Amended on August 23, 1985 ("Defendants' Report").

The defendants' response is straightforward. The Department complied with the order to provide a hearing; Mrs. Robinson was represented by counsel and had a full opportunity to present her case. Noting that the full trappings of a "formal adversarial hearing" were not required, *Robinson*, 619 F.Supp. at 350, the defendants argue that the minimal requirements of due process were observed and the Court should uphold the final and discretionary decision to impose a permanent suspension. They also argue that the D.C. APA does not apply to the Department which thus was not required to formally promulgate pursuant to that Act the policy challenged by Mrs. Robinson.

## ANALYSIS

The Supreme Court has refused to lay down a fixed set of procedures to be used in every case where due process is required, recognizing that the concept must be flexible enough to accommodate varying governmental and individual interests. *See, e.g., Goss v. Lopez*, 419 U.S. 565, 578, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975); *Wolff v. McDonnell*, 418 U.S. 539, 560, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974); *Cafeteria and Restaurant Workers Union, Local 473 v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). However, certain minimal safeguards are essential. These include adequate notice of the hearing, the opportunity to be heard and to present evidence, an impartial decision maker, and a reasoned decision based on evidence adduced at the hearing. Compliance with this last requirement must be provided in a written statement of reasons for the decision and the evidence relied upon. *Goldberg v. Kelly*, 397 U.S. 254, 270–71, 90 S.Ct. 1011, 1021–22, 25 L.Ed.2d 287 (1970); *see also Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972). From the defendants' report on the hearing filed in this proceeding and the Director's September 3, 1985 letter, the Court concludes that the process provided was deficient in several important respects.

### A.

The requirement of a written decision after a due process hearing "helps to ensure that administrators, faced with possible scrutiny by state officials and the public, and perhaps even the courts, where fundamental constitutional rights may have been abridged, will act fairly." *Wolff*, 418 U.S. at 565, 94 S.Ct. at 2979. Director Palmer's letter to Mrs. Robinson serves as the required written statement of the decision to permanently suspend her visitation privileges. A formal opinion was not necessary, *Goldberg*, 397 U.S. at 271, 90 S.Ct. at 1022. The letter, however, highlights the flaws and shortcomings of the decision-making process used by the Director.

Director Palmer's letter presents several possible reasons for continuing the suspension: (1) that the safety of prisoners is the Director's utmost responsibility and that efforts at prisoner rehabilitation will be impaired if visitors are permitted to bring contraband into the prison; (2) that the contraband policy is clearly visible to all because it is posted at entrances to the institution; and (3) that Mrs. Robinson showed further disregard for Department procedures by attempting to enter Lorton after her suspension using an assumed name.

The problems with this statement are immediately apparent. It fails to provide any specific justification for increasing Mrs. Robinson's penalty to a permanent suspension. Indeed, no discussion of the need for a permanent suspension policy or its retroactive application to Mrs. Robinson occurred at the hearing. The Department officials offered absolutely nothing to support their apparent position that the security of the prison and the rehabilitation of its prisoners would be compromised by allowing Mrs. Robinson to resume visiting her husband. Thus, even if there is a rational reason for the final decision, it is not based on evidence adduced and reported at the hearing.

It should come as no surprise that the Court places a responsibility on the Depart-

ment to produce evidence and reasons to support its position that the temporary suspension should be increased to a permanent one. In ordering the hearing, the Court specifically provided that it was to be held "for purposes of justifying the decision to suspend permanently the visitation privileges" of Mrs. Robinson. Some justification for the permanent suspension was required.[2] Yet, as reflected in the government's report to the Court, the hearing proceeded under a different assumption:

> Mr. Palmer opened the hearing by stating that the purpose of the [hearing] was to afford Mrs. Robinson and her attorneys an opportunity to present any evidence to support their position that her visitation at District of Columbia Correctional facilities should not be permanently suspended.

Defendants' Report at 1. This misunderstanding is reflected in the absence of any valid justification or reason in the Director's letter.

The second possible justification suggested in the letter is simply irrelevant to this case. The Director states: "The Department's policy regarding attempts to introduce contraband including narcotics, is posted at the entrance of each correctional facility so that all persons are made aware of the violation and its consequences." But this entire proceeding arose from the decision to retroactively impose a penalty that was not promulgated until nearly one year after Mrs. Robinson brought contraband into the prison. The "violation" may have been known to Mrs. Robinson at the time of her offense, but the "consequences" were not.[3] Finally, the letter in-

dicates that evidence outside of the hearing was considered by seeming to rely on Mrs. Robinson's alleged attempt to enter the prison under an assumed name. No evidence of this incident was presented at the hearing, nor has the Department ever relied on it as a justification for increasing the penalty for the original contraband incident to a permanent suspension.

**B.**

██ Due process also requires an impartial decisionmaker. This principal has been applied by the Supreme Court in a variety of settings because of "the powerful and independent constitutional interest in fair adjudicative procedure." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 243, 100 S.Ct. 1610, 1613, 64 L.Ed.2d 182 (1980). What constitutes an impartial decisionmaker may vary under the flexible standard of due process, just as the strigency with which the other minimal requirements are observed can vary. *See, e.g., Wolff,* 418 U.S. at 566–67, 94 S.Ct. at 2979–80 (right to call witnesses in inmate disciplinary proceedings may be limited); *Henson v. Honor Committee of U. Va.,* 719 F.2d 69, 73–74 (4th Cir.1983). At a minimum, however, the decisionmaker should not have made the decision under review or participated in the events underlying the proceeding: "[P]rior official involvement in a case renders impartiality most difficult to maintain." *Wasson v. Trowbridge,* 382 F.2d 807, 813 (2d Cir.1967); *accord Morrissey,* 408 U.S. at 485, 92 S.Ct. at 2602 ("[T]he determination that reasonable ground exists for revocation of parole should be made by someone not directly involved in the case"); *Goldberg v. Kelly,* 397 U.S. at

**2.** The Supreme Court's due process decisions do not directly address the question of the proper allocation of a burden of proof in hearings required before the deprivation of a liberty or property interest. Even in school suspension cases, where perhaps the most informal process is permitted, the decisionmaker must make a factual determination after hearing from both sides that a breach of discipline serious enough to warrant a suspension occurred. *See Goss v. Lopez,* 419 U.S. at 580–81, 95 S.Ct. at 739. *But cf. Chung v. Park,* 514 F.2d 382, 386–87 (3d Cir.1975) (in post-termination hearing, placing burden of proof on college professor to show

that administration's decision was arbitrary and capricious was not a denial of due process).

**3.** Mr. Palmer apparently also suggested at the hearing that Mrs. Robinson could not have expected to be reinstated after one year based on the letter informing her of the suspension. This statement is directly contrary to the Court's holding in the earlier Memorandum Opinion, that Mrs. Robinson had a legitimate and constitutionally protected expectation that the suspension was only temporary. 619 F.Supp. at 350.

267, 90 S.Ct. at 1020; *see also Withrow v. Larkin,* 421 U.S. 35, 58 n. 25, 95 S.Ct. 1456, 1470 n. 25, 43 L.Ed.2d 712 (1975).

The original decision to suspend Mrs. Robinson for one year was made by the defendant Whitfield. In October 1983, Mrs. Robinson requested that Ms. Whitfield reinstate her visiting privileges and was informed that "all drug suspension applicants must direct their request to the Director, James F. Palmer." Defendant's Post Hearing Memorandum in Support of their Motion for Summary Judgment, Exhibit C. In February 1984, the new contraband policy was promulgated and the decision made to permanently suspend Mrs. Robinson.[4] Mrs. Robinson requested reinstatement through a letter to Director Palmer dated March 12, 1984. On April 9, 1984, Director Palmer officially denied the request for reinstatement. *See* Defendant's Post Hearing Memorandum, Exhibit D. Director Palmer was also the decisionmaker at the due process hearing held in August, as made clear in his letter of September 3, 1985.[5]

The Court is aware that Director Palmer may have seemed the logical decisionmaker in this case, since under current policy he is the final arbiter in contraband suspensions. However, having already made a decision in February 1984 to transform Mrs. Robinson's temporary suspension into a permanent one, it is hard to see how he could objectively determine whether such a decision was justified.[6] This was not a case where Director Palmer was the only person with the power to act. *Cf. Hortonville Joint School District No. 1 v. Hortonville Education Association,* 426 U.S. 482, 487, 96 S.Ct. 2308, 2311, 49 L.Ed.2d 1 (1976); *Staton v. Mayes,* 552 F.2d 908, 913, 915 (10th Cir.1977). Another Department official could have been asked to chair the hearing and make a reasoned and impartial decision based on the evidence presented.

If the September 3, 1985 letter to Mrs. Robinson had displayed any hint of an objective reconsideration of the reasonableness of applying a retroactive penalty, it might have been possible to overlook the lack of impartiality. But, on the contrary, the hearing and the letter suggest that Director Palmer had already made his decision before the hearing. To offer due process, a hearing " 'must be a real one, not a sham or a pretense.' " *Joint Anti-Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 164, 71 S.Ct. 624, 644, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring) (quoting *Palko v. Connecticut,* 302 U.S. 319, 327, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937)).

Since the Court has determined that Mrs. Robinson's rights to due process were violated by the hearing held in August, relief can be granted without ruling on the D.C. APA claim.[7]

---

**4.** Mr. Robinson was informed of the decision to permanently bar his wife from D.C. correctional facilities in a letter from James Palmer dated February 29, 1984. *See* Defendant's Post Hearing Memorandum, Exhibit E.

**5.** *See also* Defendants' Report at 3: "Counsel then inquired as to who the decision maker is. Mr. Palmer indicated that he is the decision maker, but true to his practice, he will consult with Mr. Freeman and Whitfield who were present."

**6.** At oral argument, counsel for the defendant indicated that the procedures followed at the hearing of August 28, 1985 were approved by counsel based primarily on the Supreme Court's decision in *Wolff.* Nothing in that decision suggests that the impartial decisionmaker requirement does not apply in prison disciplinary hearings or any other hearing required by due process. *See* 418 U.S. 570–71, 94 S.Ct. at 2981–82.

**7.** The plaintiffs' claim that the permanent suspension policy was adopted in violation of the rulemaking provisions of the D.C. APA may have some merit. The plain terms of the statute appear to apply to the Department of Corrections and its regulations on visitation. *See* D.C. Code §§ 1–1501, 1502(3), 1502(6), 1502(7), 1506(a). Nevertheless, the Court feels that a challenge of this type is more properly decided in the first instance by the local courts of the District of Columbia. *Cf.* D.C.Code § 1–1510 (granting exclusive right to review agency adjudicatory decisions to the District of Columbia Court of Appeals).