Ada **ROBINSON**, et al.

v.

James F. **PALMER**, Director, **Department of Corrections, et al., Appellants.**

Ada **ROBINSON** and Albert **Robinson, Appellants,**

v.

James F. **PALMER**, Director, Department of Corrections, et al.

Nos. 86–5093, 86–5166.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 20, 1987.

Decided March 18, 1988.

---

1152

Michael G. Roberts, with whom Jeffrey
F. Lawrence, Arthur B. Spitzer and Eliza-
beth Symonds, Washington, D.C., were on
the brief for Robinson, et al. appellees in
No. 86–5093 and cross-appellants in No.
86–5166.

Karen S. Dworkin, Asst. Corp. Counsel,
with whom James R. Murphy, Acting Corp.
Counsel, and Charles L. Reischel, Deputy
Corp. Counsel, Washington, D.C., were on
the brief for Palmer, Director, Dept. of
Corrections, et al. appellants in No. 86–
5093 and cross-appellees in No. 86–5166.

Before GINSBURG and BUCKLEY,
Circuit Judges, and FAIRCHILD *,
Senior Circuit Judge.

* Of the United States Court of Appeals for the Seventh Circuit, sitting by designation pursuant to 28 U.S.C. § 294(d).

Opinion for the Court filed by Circuit Judge RUTH BADER GINSBURG.

RUTH BADER GINSBURG, Circuit Judge:

Albert Robinson is a prisoner incarcerated in the District of Columbia Department of Corrections' (Department) facility in Lorton, Virginia. The visiting privileges of his wife, Ada Robinson, were suspended for one year when she attempted to bring a quantity of marijuana, wrapped in a plastic bag secreted in her undergarments, into the prison. Eleven months later, the Department amended its contraband policy directive to prescribe permanent suspension of the visiting privileges of anyone who attempts to introduce contraband into a Department institution. Mrs. Robinson was not permitted to resume visits with her husband when the initial one-year suspension term elapsed. She and her husband thereupon commenced this action seeking reinstatement of her visiting privileges and damages; they alleged deprivation of several constitutional rights, and failure to promulgate the permanent suspension policy pursuant to the notice and comment requirements of the District of Columbia Administrative Procedure Act (D.C.APA).

Citing dispositive precedent, the district court rejected all but one of the Robinsons' constitutional claims, and it declined to rule on the D.C.APA claim. The court held for the Robinsons to this extent: it concluded that Mrs. Robinson had a protected liberty interest in recommencing visits after one year's suspension, and that the fixed term could not be converted into a permanent ban without according her notice and an opportunity to be heard. We affirm to the extent that the district court rejected the Robinsons' other constitutional claims, and reverse that court's disposition to the extent that it determined Mrs. Robinson had a constitutionally protected expectation that suspension of her visiting privileges

would be limited to one year. Further, we remand the case with instructions to dismiss, without prejudice, the D.C.APA claim.

I.

On March 8, 1983, Ada Robinson, wife of prisoner Albert Robinson, was apprehended at Lorton's Central Facility with marijuana in her possession. Department officials Salanda ·V. Whitfield and James W. Freeman thereupon notified her:

> This is to advise you that your visiting privileges at all District of Columbia Department of Corrections Facilities have been suspended for a period of one year....
>
> You may apply in writing for reinstatement of your visiting privileges after March 8, 1984....

Letter from Salanda V. Whitfield and James W. Freeman to Ada D. Robinson (Mar. 8, 1983), *reprinted in* Record Excerpts (R.E.) at Tab 3, Exhibit 1. A 1978 Department directive, still in force at the time of Mrs. Robinson's suspension, provided that "[l]egal or administrative sanctions are exercised against those who either attempt to introduce or are in possession of contraband." Department Service Order No. 5010.3B, ¶ 5(e), June 28, 1978, *quoted in Robinson v. Palmer*, 619 F.Supp. 344, 346 (D.D.C.1985).

A month before expiration of the one-year suspension initially imposed on Mrs. Robinson, the Department amended the 1978 directive to provide:

> Any visitor who introduces contraband or attempts to introduce contraband into a Department of Corrections Institution will be permanently suspended from all Department of Corrections Facilities.

Service Order No. 5010.3B, Change Transmittal 1, February 6, 1984, *reprinted in* R.E. at Tab 3, Exhibit 3.[1] Both Albert and Ada Robinson wrote to James F. Palmer, the Department Director—Albert in Febru-

---

**1.** This change was superseded on May 4, 1984 by Department Service Order 5010.3C which reads in relevant part:

Any visitor who is discovered introducing or attempting to introduce contraband into an

Institution will be permanently suspended from entrance to all Department Facilities. Service Order 5010.3C, ¶ 5(a)(7), *reprinted in* R.E. at Tab 3, Exhibit 4.

ary and Ada in March 1984—requesting reinstatement of Mrs. Robinson's privileges. By letter dated February 29, 1984, the Director informed Albert Robinson that his wife was "permanently barred ... based on her attempt to introduce contraband." Letter from James F. Palmer to Albert Robinson (Feb. 29, 1984), *reprinted in* R.E. at Tab 3, Exhibit 5. The Director wrote Mrs. Robinson:

> I am concerned about preventing contraband from entering the Department institutions. Therefore, your suspension of visting [sic] privileges will remain in effect.

Letter from James F. Palmer to Ada D. Robinson (Apr. 9, 1984), *reprinted in* R.E. at Tab 3, Exhibit 6.[2]

Endeavoring to achieve reinstatement of Mrs. Robinson's permission to visit, Ada and Albert Robinson, in April 1984, commenced the instant action. Seeking injunctive and declaratory relief as well as damages under 42 U.S.C. § 1983, they named as defendants Corrections Department Director James F. Palmer, and two Department officials, Salanda V. Whitfield and James W. Freeman.[3] In addition to asserting that the permanent withdrawal of Mrs. Robinson's visiting privileges trenched impermissibly on the Robinson's first, fifth, eighth, and ninth amendment rights, the complaint asserted noncompliance with the D.C.APA, D.C.Code §§ 1–1501 *et seq.*

The district court disposed of the case, pursuant to the parties' cross motions for summary judgment, in two successive published opinions: *Robinson v. Palmer*, 619 F.Supp. 344 (D.D.C.1985); and *Robinson v. Palmer*, 631 F.Supp. 52 (D.D.C.1986). Of the various constitutional claims the Robinsons asserted, the district court found merit in only one. As that court stated its

ruling, the Whitfield–Freeman March 8, 1983 letter

> gave Mrs. Robinson a protected interest and expectation that suspension of her visitation privileges would be limited to one year. That suspension could not be permanently extended without notice and without affording her an opportunity to be heard.

*Robinson v. Palmer*, 619 F.Supp. 344, 350 (D.D.C.1985). To implement this ruling, the court ordered the defendant Department officials to convene a hearing for "purposes of justifying the decision to suspend permanently the visitation privileges of the plaintiff, Ada Robinson." Order, *Robinson v. Palmer*, No. 85–1044 (D.D.C. Aug. 8, 1985), *reprinted in* R.E. at Tab 1. The court deferred ruling on the D.C.APA claim, and it awarded nominal damages of one dollar under 42 U.S.C. § 1983 based on its conclusion that Mrs. Robinson had been denied procedural due process. *Id.; see* 619 F.Supp. at 350–51.

After an August 27, 1985 hearing at which Department Director Palmer presided, the Department adhered to its decision to bar Mrs. Robinson from visiting D.C. penal facilities. Both sides then renewed their motions for summary judgment. The court granted the Robinsons' motion, stated that adequate relief could be afforded plaintiffs without passing on their D.C.APA claim, and ordered Mrs. Robinson's visiting rights restored. *Robinson v. Palmer*, 631 F.Supp. 52 (D.D.C.1986). No "valid justification or reason" has been presented for retroactively imposing on Mrs. Robinson the revised contraband policy, the court declared, *id.* at 55; nor did Department Director Palmer, who chaired the hearing, serve as an impartial decision-maker, the court added. *Id.* at 56.

---

**2.** We note, as did the district court, 619 F.Supp. at 346 n. 1, that on March 25, 1983, over two weeks after suspension of her visiting privileges, Mrs. Robinson was charged with trying to enter Lorton under an assumed name. "[I]t has been the consistent position of the defendants," however, "that Mrs. Robinson's permanent suspension is based on the contraband policy." *Id.*

**3.** The Robinsons also named the District of Columbia and the Mayor of the District of Columbia as defendants, but the district court, on its own motion, dismissed these two defendants on the ground that the Robinsons' complaint stated no cognizable claim against either of them. *Robinson v. Palmer*, 619 F.Supp. 344, 347 (1985). The Robinsons have not appealed this determination.

Both sides appealed. The Department defendants challenge the determination underpinning all the relief granted to the plaintiffs; they assert that Mrs. Robinson had no protected liberty interest in the restoration of her visiting privileges. The Robinsons challenge the rejection of their first amendment/marital association rights claim. Conditionally, *i.e.*, only if we reject their constitutional claims, the Robinsons urge us to instruct the district court to rule on issues they raise under the D.C.APA.

II.

We hold that, under governing Supreme Court precedent, Mrs. Robinson had no constitutionally-shielded liberty interest in the restoration of her visiting privileges. We therefore reverse all district court rulings tied to the conclusion that she possessed such an interest. We further hold, in accord with the district court, that the Robinsons' first amendment/right to sustain a marriage relationship claim must be rejected, and that—in view of the dismissal of all their federal claims—the Robinsons' D.C.APA contentions should not be adjudicated in a federal court.

A. *The Alleged Liberty Interest*

█ The district court held that the Department's March 8, 1983 letter "gave Mrs. Robinson a [constitutionally] protected interest and expectation that suspension of her visitation privileges would be limited to one year." 619 F.Supp. at 350. We find that determination incorrect. The March 8, 1983 Whitfield–Freeman letter, we do not doubt, led the Robinsons to expect that Mrs. Robinson's suspension would last only one year. Director Palmer's subsequent February 29 and April 9, 1984 letters to the Robinsons just as surely disappointed those expectations. But expectation of a benefit is not enough to generate a liberty interest protected by the Constitution. *See, e.g.*, *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465, 101 S.Ct. 2460, 2464, 69 L.Ed.2d 158 (1981) (felon's expectation that his sentence will be commuted is "simply a unilateral hope"); *Meachum v. Fano*, 427 U.S. 215, 228, 96 S.Ct. 2532, 2540, 49 L.Ed. 2d 451 (1976) (felon's expectation that he

will remain at a particular prison too "insubstantial" to invoke due process protections). Nor does every disappointment or "grievous loss visited upon a person by the State ... suffic[e] to invoke the procedural protections of the Due Process Clause." *Meachum*, 427 U.S. at 224, 96 S.Ct. at 2538.

*Jago v. Van Curen*, 454 U.S. 14, 102 S.Ct. 31, 70 L.Ed.2d 13 (1981) seems to us so closely in point as to control the Robinsons' "liberty interest" claim. In that case, a prisoner challenged the Ohio Adult Parole Authority's rescission, without a hearing, of its decision, conveyed to the prisoner by written notice, to grant him early release. Distinguishing precedent concerned with "property interests," the Supreme Court held that the "mutually explicit understanding" generated by the Parole Authority's early release notice created no protected liberty interest entitling the prisoner to a hearing before rescission of the early release decision.

█ The March 8, 1983 Department letter on which the Robinsons rely, like the early release determination in *Jago*, may indeed have created a "mutually explicit understanding." But if the official early release decision in *Jago* created no liberty interest, we do not think it rational to accord heavier weight to the advice Mrs. Robinson initially received. *See also Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. at 465, 101 S.Ct. at 2464 (rejecting argument that Pardon Board's past course of conduct had given rise to an unspoken understanding between Board and inmates capable of generating constitutional protection under the "liberty interest" rubric).

As the Supreme Court has cautioned us, protected interests in the prison setting are "necessarily limited":

We would severely restrict the necessary flexibility of prison administrators and parole authorities were we to hold that any one of their myriad decisions with respect to individual inmates may ... give rise to protected "liberty" interests which could not thereafter be impaired without a constitutionally mandated hearing under the Due Process Clause.

*Jago,* 454 U.S. at 19, 102 S.Ct. at 35. Mindful of that admonition, we reverse the district court's determination that the March 8, 1983 Whitfield–Freeman letter created a liberty interest in the restoration of Mrs. Robinson's visiting privileges after the one-year suspension.[4] We also reverse the award of nominal damages tied to that determination.

### B. *The First Amendment Claim*

■ Even if their protected liberty interest claim fails, the Robinsons contend they should still prevail because the Department's permanent denial of face-to-face communications between husband Albert and wife Ada curtailed, without "reasonably compelling" cause to do so, the couple's right to maintain a marital relationship. *See* Opening Brief of Appellants/Cross–Appellees at 11–12. We disagree, for substantially the reasons stated by the district court. *See* 619 F.Supp. at 347–48. It suffices to summarize those reasons here.

The district court observed that the Robinsons did not challenge the propriety of subjecting Mrs. Robinson to sanctions for carrying contraband into Lorton. *Id.* at 347. They confined their challenge to the propriety of a *permanent* suspension of visiting privileges. *Id.* The district court responded:

> Because of the security objections behind the contraband policy and the dangers posed by the introduction of contraband into Lorton, the Court cannot conclude that it is unreasonable for prison officials to adopt a permanent suspension policy.

*Id.* at 347–48 (footnote omitted). The court was not insensitive to the plea of the Robinsons regarding maintenance of their marital relationship, but it held that, under the circumstances, the court could not command the prison authorities to accord them more than the alternate channels of communication available to them—letters, tele-phone, messages conveyed through other members of the family whose visitation had not been restricted.

The Supreme Court, in upholding a jail policy denying pretrial detainees contact visits with their spouses, relatives, children, and friends, took "judicial notice that the unauthorized use of narcotics is a problem that plagues virtually every penal and detention center in the country." *Block v. Rutherford,* 468 U.S. 576, 588–89, 104 S.Ct. 3227, 3234, 82 L.Ed.2d 438 (1984). Moreover, in the very case in which the Supreme Court held impermissible a prison regulation effecting an "almost complete ban" on marriage by inmates, *Turner v. Safley,* —— U.S. ——, 107 S.Ct. 2254, 2267, 96 L.Ed.2d 64 (1987), the Court reiterated:

> [W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. In our view, such a standard is necessary if "prison administrators ..., and not the courts, [are] to make the difficult judgments concerning institutional operations."

*Id.* 107 S.Ct. at 2261, quoting *Jones v. North Carolina Prisoners' Union,* 433 U.S. 119, 128, 97 S.Ct. 2532, 2539, 53 L.Ed.2d 629 (1977); *see also id.* 107 S.Ct. at 2267. The Court upheld in *Turner* a Missouri regulation restricting inmate-to-inmate correspondence, 107 S.Ct. at 2263–64, and stated that an inmate's marriage is indeed "subject to substantial restrictions as a result of incarceration," *id.* at 2265, although the restrictions imposed must be "reasonably related to legitimate penological objectives," *id.* at 2267, including "legitimate security concerns." *Id.* at 2266.

The suspension policy at issue, while unyielding, surely furthers the legitimate government objective of staunching the flow of drugs into the prison system; it

---

**4.** The Robinsons raise for the first time in their reply brief an alternative due process theory: "increasing a penalty after it has been set transgresses the due process right to be free from retroactive punishment." Reply Brief of Appellants/Cross–Appellees at 8. The doctrine that restricts the retroactive imposition of a criminal penalty, however, does not apply in a situation, such as this one, where prison authorities have revoked a privilege or dispensation prior to its becoming effective. *Cf. Jago v. Van Curen,* 454 U.S. 14, 22–23, 102 S.Ct. 31, 36–37, 70 L.Ed.2d 13 (1981) (Blackmun, J., concurring in the result).

avoids the risk that "special treatment" of any class of visitors will prompt resentment among the inmate population; and it leaves open some communication channels, albeit less satisfactory ones, between inmate and excluded spouse. In light of the serious disruption that the introduction of drugs into a penal facility may cause, we cannot say that the Department's current policy is an "exaggerated response" to the perceived threat. *See Turner,* 107 S.Ct. at 2262. We therefore affirm the district court's dismissal of the Robinsons' first amendment claim.

### C. *The D.C.APA Claim*

■ The Robinsons renew on appeal their claim that the Department of Corrections' "failure to comply with the public notice and comment requirements of the District of Columbia Administrative Procedures [sic] Act, D.C.Code § 1–1501 *et seq.* ..., as well as the publication requirement of D.C.Code § 1–1538(b), render[s] the February 1984 visitation regulations invalid." Opening Brief of Appellants/Cross-Appellees at 28. The district court declined to rule on this claim, observing that "a challenge of this type is more properly decided in the first instance by the local courts of the District of Columbia." 631 F.Supp. at 56 n. 7. We agree. Because no federal claim remains in the case, the district court, on remand, should dismiss without prejudice the D.C.Code claim. *See, e.g., United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed. 2d 218 (1966) ("if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well").

### CONCLUSION

We understand the district court's dismay at responses on the part of the Department defendants that appeared to indicate bureaucratic arrogance or abuse. The district court noted, for example, that while the defendants contended at the oral hearing on the summary judgment cross motion, that a February 15, 1983 memorandum from the Department Director to his assistants referred to a permanent suspension of visiting privileges for contraband violations, it is clear that that memorandum was never written, published or circulated as a Department Order or Service Order as customarily done by the Department with respect to its contraband policy.

619 F.Supp. at 350; *see also* 631 F.Supp. at 55–56. Because we shared the district judge's concern over possibly arbitrary or excessive conduct by Department officials, we directed several post-argument inquiries to the Department regarding the even-handedness, in application, of the permanent suspension policy. *See* Orders of February 24, March 17, May 14, and October 14, 1987. Counsel for the Department defendants answered our inquiries with candor and has also informed the court that Albert Robinson has a release date of April 17, 1988.

While we do not condone the sometimes offhand official behavior that disturbed the district judge, we are obliged to reject, for the reasons stated, the constitutional challenges the Robinsons have mounted. Accordingly, the opinion of the district court is reversed in part and affirmed in part, and the case is remanded with instructions to dismiss the federal claims with prejudice and the D.C.Code contentions without prejudice.

*It is so ordered.*