# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued February 10, 2006          Decided May 23, 2006

No. 05-7028

ELIZABETH LIGHTFOOT, ET AL.,
APPELLEES

v.

DISTRICT OF COLUMBIA, ET AL.,
APPELLANTS

---

Appeal from the United States District Court
for the District of Columbia
(No. 01cv01484)

---

*James C. McKay, Jr.* argued the cause for appellants. With him on the briefs were *Robert J. Spagnoletti*, Attorney General, Office of the Attorney General of the District of Columbia, and *Edward E. Schwab*, Deputy Attorney General.

*Duncan N. Stevens* argued the cause for appellees. With him on the brief were *Charles F.B. McAleer*, *Alan I. Horowitz*, *Jeffrey S. Gutman* and *Lynn E. Cunningham*. *Robert J. Harlan, Jr.* entered an appearance.

Before: GARLAND, *Circuit Judge*, and SILBERMAN and WILLIAMS, *Senior Circuit Judges*.

Opinion for the Court filed PER CURIAM.

Concurring opinion filed by *Senior Circuit Judge* SILBERMAN.

PER CURIAM:  The District of Columbia (and various D.C. government officials) appeals from a decision of the district court granting partial summary judgment to appellees, a class of former D.C. government employees whose disability compensation benefits have been terminated, suspended, or reduced.  The court concluded that the benefit program's lack of written guidelines and published rules caused a violation of the Due Process Clause and the D.C. Administrative Procedure Act (DCAPA).  The court reinstated benefits for class members and remanded to a D.C. agency to undertake rulemaking. Immediately after oral argument we granted a stay of the district court's reinstatement order.  We reverse the judgment on both claims, vacate the reinstatement order, and direct a limited remand.

I

Plaintiffs challenge the procedural adequacy of the District of Columbia's employee disability compensation program (governed by Title 23 of the District of Columbia Government Comprehensive Merit Personnel Act (CMPA) of 1978)[1] – specifically, the circumstances under which class members lose benefits.  Under the CMPA, District employees who are injured in the performance of their duties are entitled to monetary compensation, medical services and appliances, and vocational rehabilitation.  The compensation levels depend on whether an

---

[1]*See* D.C. Code § 1-601.01 *et seq.* (2001).  As explained below, the CMPA was amended subsequent to the district court's grant of summary judgment.

employee's disability is partial or total, and is further based on a statutory schedule. After an employee is determined to be disabled, "[i]f the Mayor or his or designee has reason to believe a *change* of *condition* has occurred, the Mayor or his or her designee may modify the award of compensation." (Emphasis added). For purposes relevant to this suit, a "change of condition" obviously means a reduction or elimination of the condition that caused the disability, which of course is the governing statutory standard. A beneficiary displeased with the District's determination has thirty days to request a hearing before a Department of Employment Services disability compensation administrative law judge, and at the hearing, the ALJ must "receive such relevant evidence as the claimant adduces." The agency then must notify the beneficiary of the decision in writing within thirty days of the hearing. The beneficiary may file an application for review within thirty days of receipt of that decision with the director of the Department of Employment Services, who must notify the applicant of his or her decision in writing. The beneficiary, within thirty days of that decision, may then file an application for review with the D.C. Court of Appeals.

In their initial complaint, plaintiffs alleged that despite the CMPA's rather elaborate procedures, the program provided insufficient *pre*-deprivation process to beneficiaries whose benefits had been reduced or terminated under the statute. They alleged that the CMPA failed to provide pre-deprivation notice and an opportunity to respond, even in writing, to a benefits termination decision and also that the District's termination procedures were inadequate in their explanations of termination decisions and beneficiaries' appellate rights. Plaintiffs moved the following month for a preliminary injunction reinstating their benefits and enjoining the termination of those benefits without a more thorough pre-termination process.

In an October 2001 opinion, the district court recognized that under *Mathews v. Eldridge*, 424 U.S. 319 (1976), appellees had a property interest in their continued receipt of disability benefits. The court went on to observe that the program's formal *pre-termination* procedures were less elaborate than those sanctioned in *Mathews*. The CMPA itself provided for no pre-termination "hearing," nor time frame within which a requested *post*-termination hearing had to be scheduled. The District asserted that, as a matter of policy (although unwritten), beneficiaries were given thirty days of continued benefits after receiving an initial termination notice. According to the District, during that period they could seek reconsideration by written submission and receive a decision within two or three weeks. Although the initial notice did not – at least initially – give an extensive explanation of the District's "reason to believe a change of condition has occurred," it did typically provide the physician's prognosis on which the District had relied. And according to the District, the notices advised beneficiaries of the thirty-day reconsideration period as well.

The district court expressed concern that the District's pre-termination procedure was not set forth in any formal general regulation or handbook, as opposed to in the individual notices. The court found the "looseness of the reconsideration process and the lack of any *enforceable* grace period" problematic. (Emphasis added). The district court thought it particularly troubling that even if beneficiaries received the thirty-day grace period during which they could request reconsideration, there was no guarantee that either a beneficiary's reconsideration request would be resolved during that period or that the grace period could be extended to allow for bureaucratic delay in responding to the reconsideration request. This, coupled with the District's alleged exclusive reliance on the findings of independent medical examiners (doctors retained by the District), rather than on those of treating physicians, led the

district court to conclude that appellees were substantially likely to prevail on the merits. Nevertheless, the court denied the motion for a preliminary injunction after finding that the equitable factors weighed against such relief.

Plaintiffs amended their complaint to add the administrator of the disability compensation program (an independent contractor) as a defendant[2] and to add a claim alleging the District's violation of the D.C. Administrative Procedure Act (claim seven). Then, more than a year later, in January 2003, plaintiffs filed a third amended complaint modifying the DCAPA claim and substituting a new claim six alleging that the District's failure to set forth its procedures in written rules violated due process.

Appellees moved for partial summary judgment on claims six and seven. Like claims one through five, claim six is premised on 42 U.S.C. § 1983. Specifically, it asserts that "[d]efendants have failed to adopt written and consistently applied standards, policies and procedures governing the termination, suspension and modification of benefits in violation of the Due Process Clause." The DCAPA claim (claim seven) alleges that defendants violated that act by adopting policies, practices, and procedures regarding the termination, suspension, or modification of disability benefits without engaging in notice-and-comment rulemaking.

This time, in September 2004, the district court granted plaintiffs' motion, *see Lightfoot v. District of Columbia*, 339 F. Supp. 2d 78 (D.D.C. 2004); and the court denied the District's

---

[2]CLW/Creative Disability Management is an independent contractor to whom the District contractually delegated authority to decide disability compensation claims and make award modification decisions.

motion for reconsideration in January 2005, *see Lightfoot v. District of Columbia*, 355 F. Supp. 2d 414 (D.D.C. 2005). Observing that the issue presented by claim six was "purely legal" – "whether Due Process demands that notice and the potential for arbitrary decision-making requires that written policies and procedures exist to limit discretion and guide the termination, suspension or modification process" – the court concluded that "this largely unwritten system full of guesswork and innuendo fails to meet the strictures of Due Process." The court purported to decide only claim six – that the absence of more specific guidelines governing termination procedures violated due process, and *not* that the procedures actually employed did so. As to claim seven, the district court concluded that "[d]efendants' reliance on unwritten 'best practices' and unpublished procedures to guide the Disability Compensation Program constitute[d] rule-making under the DCAPA" and was not authorized as an exception to notice-and-comment rulemaking for internal agency procedures.[3]

As noted, the district court remanded the case to the District for rulemaking and ordered that disability compensation benefits of all members of the plaintiff class be reinstated until individualized termination or modification determinations could be made under validly promulgated rules. The remand order further directed the District to "strongly consider" promulgating rules on eleven procedural issues that the court implicitly considered inadequately resolved.[4] The court referred the

---

[3]The District contends that the third-party claims administrator employs "best practices," which it describes as the unwritten, industry-standard methods of weighing evidence and reaching an eligibility determination.

[4]The Court's suggested topics for rulemaking were as follows:

question of possible retroactive relief related to claims six and seven to a magistrate judge for further proceedings.

Denying the District's motion for reconsideration, the court strongly objected to the District's characterization of the ordered relief as an injunction and insisted that "[t]he [c]ourt did *not*

---

•What regular opportunities do beneficiaries have to provide medical or vocational information to a claims adjuster prior to a decision to terminate, suspend or modify disability benefits?

•What are the protocols that govern the independent medical evaluation – when, why, and where one is performed – and the content of the resulting report?

•What weight is assigned to the independent medical evaluation v. the opinion [of] the treating physician, and does the treating physician have an opportunity to comment on the independent medical evaluation before a decision is made?

•Does the beneficiary have the right to access his/her file before the termination decision? What deadlines must the third party administrator follow once file access is requested?

•May a terminated beneficiary retain counsel, and does their attorney have the same right to review the beneficiary's file in order to prepare necessary argument?

•What standards are employed in making the termination decision, and what weight is afforded each piece of information before the adjuster?

•What standard of review is employed on reconsideration and appeal?

•What is the specific timeline for reconsideration and appeal?

•Are there extensions of time for good cause if a personal or other emergency prevents a beneficiary from responding to a termination notice in the outlined time period?

•What kinds of information may beneficiaries submit in response to a notice that their benefits will be terminated?

•Under what circumstances are benefits paid pending reconsideration subject to recoupment, and what are the procedures by which a beneficiary may seek a waiver?

issue an injunction and did not analyze the case under the legal standards for an injunction." According to the district court, it had merely "void[ed]" the system and remanded for rulemaking.

## II

The District seeks reversal of the summary judgment as well as vacation of the reinstatement order. Rather peculiarly, the District explicitly does not seek vacation of the remand order – presumably because the District responded with statutory amendments and emergency regulations that largely met the district judge's "suggestions."[5] But if we agree with the District

---

[5]Just before the district court issued its decision on reconsideration, the D.C. Council enacted the Disability Compensation Effective Administration Amendment Act of 2004, D.C. Act 15-685, 52 D.C. Reg. 1449 (Jan. 4, 2005), which took effect April 5, 2005. In relevant part, the Act formalizes the thirty-day reconsideration period and prohibits any termination of benefits either during that period or prior to resolution of a reconsideration request.

Since February 2005, the director of the District's Office of Risk Management has also complied with the remand order by issuing emergency rules. *See* 52 D.C. Reg. 5481 (Jun. 10, 2005). The emergency rules expire 120 days after issuance, and it appears that identical emergency rules have been adopted on a rolling basis. *See, e.g.*, 52 D.C. Reg. 8964 (Oct. 7, 2005). These rules provide additional guidelines for the District's benefits modification and termination procedures, including enumerating factors on which a modification or termination decision can be based, reaffirming the thirty-day reconsideration period, and providing reasons that would justify the District's reliance on a report of an independent medical examiner over that of a treating physician. The rules also require the District to provide beneficiaries "a narrative description of the rationale" for a modification or termination decision.

that the court should not have granted summary judgment on either claim, the remand order will perforce lose any vitality.

Appellees respond by first challenging our appellate jurisdiction, pointing out that the district court has not issued a final judgment. The District concedes the point but contends that the reinstatement order is an injunction appealable under 28 U.S.C. § 1292(a)(1). Although appellees reiterate the district court's contention that it did not grant an injunction, we rather easily conclude that the district court's reinstatement order was just that. It ordered the payment of benefits to hundreds of former employees. Indeed, up to the time of the district court's 2004 opinion, both the court and appellees consistently characterized reinstatement of benefits as injunctive relief. For example, when the court denied the preliminary injunction in 2001, it stated that "[p]laintiffs seek a preliminary injunction reinstating their benefits and enjoining [d]efendants from terminating these benefits without a more thorough pre-termination process." That is exactly the relief the court ordered, although in a different form. Appellees' subsequent third amended complaint likewise requested this relief and phrased it in terms of an injunction.

The court seemed to be under the impression that it could treat this case as if it were an administrative law review of agency action and thus issue the reinstatement and remand orders without implicating 28 U.S.C. § 1292(a)(1). But as the Seventh Circuit has recognized, a § 1983 suit is not one to review the actions of a state agency. "Federal courts have no general appellate authority over state courts or state agencies." *Hameetman v. City of Chicago*, 776 F.2d 636, 640 (7th Cir. 1985). Thus, even when a district court purports to remand to a state agency under § 1983 – as did the district court here – it actually issues an injunction. *See id.* The reinstatement order is *a fortiori* an injunction.

10

III

The district court's grant of summary judgment on claim six was based on its view that the District was terminating disability benefits without standards and that this constituted a violation of due process. It may well be the case that an agency that terminates such statutorily-entitled benefits without any *reason* violates due process, because that would deprive a beneficiary of the capacity to challenge the termination. More controversial, *see infra* at 1-7 (Silberman, J., concurring), is the claim that the Due Process Clause may impose a requirement of substantive standards – independent of statutory standards – that may be used to restrict an administrative agency's decision to terminate or modify a protected liberty or property interest. Assuming arguendo that such a cause of action can be made out, we think it is wholly without merit here because the CMPA and D.C. court of appeals decisions themselves provide ample standards that would satisfy any such due process claim. There is certainly no conceivable due process claim that could be predicated on the notion that an agency must proceed to establish such standards through rulemaking rather than case-by-case determinations. *See NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294 (1974).

Appellees' claims one through five raise issues regarding the adequacy under due process of the specific procedures employed by the District, an analysis of which the district court ostensibly has not yet undertaken. We thus conclude only that the district court's grant of summary judgment on claim six was error.

IV

The district court also granted summary judgment on claim seven, which is premised on the D.C. Administrative Procedure

Act. The court held that the District's reliance on unwritten "best practices" and unpublished procedures to guide the administration of the disability benefits program constituted rulemaking under the DCAPA and that because such rulemaking was not pursuant to the DCAPA's notice-and-comment procedures, it was unlawful. The District argues that the procedures were internal staff directives and thus within a rulemaking exception and, in any event, that the district court abused its discretion in exercising supplemental jurisdiction over this "unsettled and complex issue of District law."

In light of our reversal of summary judgment as to claim six, we think it appropriate to remand claim seven back to the district court for reconsideration of its decision to exercise supplemental jurisdiction over that claim. *See* 28 U.S.C. § 1367(c). First, it may be that on remand there are no longer any viable federal claims in this suit, in which case the district court should dismiss the DCAPA claim. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). Second, while neither party has briefed the issue, the DCAPA claim may very well be moot. The District has not appealed the remand order, plaintiffs have received substantial post-termination process, and the District has gone on to adopt amendments to the CMPA and new emergency rules. Moreover, money damages are not an appropriate remedy under the DCAPA.

Third, and most importantly, the DCAPA's judicial review provision places exclusive jurisdiction in the D.C. Court of Appeals to review District agency action. *See Fair Care Found. v. Dep't of Ins. and Sec. Reg.*, 716 A.2d 987, 997 (D.C. 1998). As we have already noted, a federal district court hearing a § 1983 due process suit does not have comparable authority; it cannot, for instance, remand a case to a state agency, thereby acting in something of a supervisory capacity. *Compare Hameetman*, 776 F.2d at 640, *with Webb v. Dep't of*

*Human Servs.*, 618 A.2d 148, 152 (D.C. 1992). For these reasons, the district court might well conclude that it would be unwise to exercise supplemental jurisdiction over this District claim. We previously indicated as much in *Robinson v. Palmer*, 841 F.2d 1151, 1157 (D.C. Cir. 1988), where we agreed with the district court's refusal to decide a DCAPA claim that a District agency had failed to comply with notice-and-comment rulemaking requirements. To be sure, we have not been consistent; our earlier cases were to the contrary. *See Spivey v. Barry*, 665 F.2d 1222, 1234 (D.C. Cir. 1981)*; Milhouse v. Levi*, 548 F.2d 357, 365 n.19 (D.C. Cir. 1976). But those earlier cases did not consider the anomaly of a federal court *reviewing* a District agency. Of course, that does not mean that a federal court lacks authority to entertain a claim under § 1983 that would also be cognizable as a DCAPA claim to the D.C. Court of Appeals. *See City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 164 (1997); *District Props. Assoc. v. District of Columbia*, 743 F.2d 21, 26-27 (D.C. Cir. 1984).

Given these concerns and the parties' minimal briefing on these issues, we will remand claim seven to the district court to allow it an opportunity to reconsider its exercise of supplemental jurisdiction.

\* \* \*

Based on the foregoing, we reverse summary judgment on both claims, vacate the reinstatement order, and remand the case to the district court for further proceedings consistent with this opinion.

S<span>ILBERMAN</span>, *Senior Circuit Judge*, concurring:

I write separately to comment more fully on the district court's disposition of claim six – the due process claim. Although the court purported to decide only that claim – that due process required more specific written and published guidelines governing termination procedures, and not that the procedures actually employed were inadequate – the court's opinion clearly intermixed both contentions.

*Mathews v. Eldridge*, 424 U.S. 319 (1976), sets forth a framework to be utilized in judging the adequacy of a government's *procedures* that deprive a person of life, liberty, or property.[1] Typically, the focus is on whether the government – in the latter two categories – must provide a pre-deprivation hearing and, if so, how formal. *See, e.g., id.* at 323; *Wilkinson v. Austin*, 125 S. Ct. 2384, 2388 (2005). In *Mathews* itself, the Supreme Court sanctioned a rather informal pre-deprivation "hearing" for the discontinuation of Social Security disability payments, one that involved only a claimant's opportunity to examine his or her file and respond in writing with additional evidence supporting the continuation of benefits. *See* 424 U.S. at 345-46.

The district court, despite its explicit application of *Mathews v. Eldridge* in its first decision denying an injunction, accepted appellees' argument that in considering claim six, *Mathews* was not relevant. Instead, as we noted, the court proceeded essentially as if it were reviewing federal agency action under the APA. Its analysis started with the proposition that "[c]ourts should require administrative officers to articulate

---

[1]A court considers three factors: the private interest at issue; the risk of an erroneous deprivation through the actual procedures, and the probable value of additional procedural safeguards; and the government's interest, including the burdens associated with additional procedural requirements. *Mathews*, 424 U.S. at 335.

the standards and principles that govern their discretionary decisions in as much detail as possible," quoting one of our old administrative law cases, *Environmental Defense Fund, Inc. v. Ruckelshaus*, 439 F.2d 584, 598 (D.C. Cir.1971). That may well be an overly broad statement of judicial review, even under the APA, and inconsistent with our more modest jurisprudence in subsequent decades. *See, e.g., PDK Labs. Inc. v. DEA*, 438 F.3d 1184, 1194 (D.C. Cir. 2006) (rejecting the proposition that "an unarticulated standard does not comport with . . . the APA" and observing that an agency need only "pour some definitional content into a vague statutory term by defining the criteria it is applying"). But in any event, *Ruckelshaus* and the other case the court cited for this general proposition, *Matlovich v. Secretary of the Air Force*, 591 F.2d 852, 857 n.11 (D.C. Cir. 1978), were strictly APA cases; constitutional due process was not even mentioned. Under the APA we, of course, have a broad charge to ensure the reasonableness of agency action – setting it aside when arbitrary and capricious, *see* 5 U.S.C. § 706(2)(A) – but this is not an APA case.

The district court thought to import the APA scope of review into this § 1983 due process suit by relying on two rather old circuit court cases: *White v. Roughton*, 530 F.2d 750 (7th Cir. 1976), and *Holmes v. New York City Housing Authority*, 398 F.2d 262 (2d Cir. 1968). *See also* Peter L. Strauss et al., *Gellhorn and Byse's Administrative Law* 833 (10th ed. 2003). These cases do stand for the proposition that when a government agency is given authority to dispense benefits (in *White* it was general assistance grants, and in *Holmes* it was low-rent public housing) to applicants – no one of which has a particular statutory entitlement – the agency must do so in accordance with ascertainable standards in accordance with due process. It should be noted, however, that the Supreme Court has never adopted the notion that an *applicant* for public benefits – even one with a claim of entitlement under a statute – has a threshold

property interest triggering due process analysis. *See Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 321 n.8 (1985). Moreover, these cases did not apply the *Mathews v. Eldridge* framework because *Holmes* preceded *Mathews* by almost eight years and *White* issued only three days after *Mathews*.

Appellees, therefore, are quite incorrect in asserting that cases raising the sort of due process issue alleged in claim six are somehow to be analyzed outside of *Mathews v. Eldridge* – an assertion the district court seemed to accept. The Supreme Court has repeatedly insisted that procedural due process claims be measured in accordance with *Mathews*. *See, e.g., Hamdi v. Rumsfeld*, 542 U.S. 507, 528 (2004) (plurality opinion) (describing the *Mathews* test as the "ordinary mechanism" for due process challenges); *Parham v. J.R.*, 442 U.S. 584, 599 (1979) (describing the *Mathews* test as the "general approach" for such cases).

It is quite understandable that appellees and the district court would see the *Holmes* and *White* cases as somehow outside the *Mathews v. Eldridge* framework because the truth is that neither case is a proper interpretation of the Due Process Clause. Their focus, as is that of appellees' claim six, is not on process but on substance. Yet the Supreme Court's due process jurisprudence carefully distinguishes process from substance. The issue is always, in its due process cases, whether or not the claimant has had a fair opportunity – sometimes rather informal – to present his case and not whether the agency's substantive decision was reasonable. To be sure, as we today recognize, if an agency refused to give *any* reason for an initial deprivation, it would be impossible for the claimant to present an argument that the agency's decision was incorrect. So procedure is implicated. But that assuredly does not mean that the Due Process Clause can be used as a looming super-arbitrary-and-

capricious standard governing the substantive decisions of an administrative agency no matter how much discretion the agency enjoys. The quality of an agency's reasoning is decidedly not a process issue. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50-51 (1983).

Granted, some Supreme Court justices in *dissenting* opinions have sought to expand due process analysis to include challenges to government substantive decisions. *See, e.g., Bd. of Regents v. Roth*, 408 U.S. 564, 588 (1972) (Marshall, J., dissenting); *cf. Walters*, 473 U.S. at 369 (Stevens, J., dissenting). But the Court has never accepted that effort to transform the Due Process Clause. In short, *Holmes* and *White* are not only irrelevant to this case, they were also wrongly decided and simply do not survive the *Mathews v. Eldridge* era.

The district court's concern with the weight to be accorded an independent medical examiner's opinion, as opposed to that of a beneficiary's treating physician, is not a due process issue either, but rather a substantive question of compliance with the statute and perhaps the DCAPA.[2] This is a quite common substantive issue in the administration of disability and worker's compensation statutes. *See, e.g., Nat'l Mining Ass'n v. Dep't of Labor*, 292 F.3d 849, 861 (D.C. Cir. 2002) (discussing a "treating physician rule" promulgated pursuant to the Black Lung Benefits Act). If a claimant were not entitled to present

---

[2]Indeed, the D.C. Court of Appeals has spoken on numerous occasions of the preference for treating-physicians over independent medical examiners. Most recently, in *Kralick v. Department of Employment Services*, 842 A.2d 705, 711 (D.C. 2004), the court addressed the exact program at issue in this case and reaffirmed the treating physician preference. *See also Canlas v. Dep't of Employment Servs.*, 723 A.2d 1210, 1211-12 (D.C. 1999); *Stewart v. Dep't of Employment Servs.*, 606 A.2d 1350, 1353 (D.C. 1992).

*any* evidence in support of his or her continuation of benefits prior to their termination, that would implicate due process. But if the Due Process Clause were to extend to an administrative agency's determination as to how much weight is to be afforded to particular kinds of evidence, it would swallow much of administrative law – both state and federal.

Similarly, so long as the District made available the medical examiner's report and identified the prognosis on which its change-of-condition determination was based – so that a claimant could adequately respond – that the District did not provide a quasi-judicial opinion hardly implicates due process. The Supreme Court has emphasized again and again that adequate pre-termination process does not require formality. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545 (1985); *Mathews*, 424 U.S. at 343; *Boddie v. Connecticut*, 401 U.S. 371, 378 (1971). As to the District's alleged failure to individually notify claimants of statutory procedural rights, I think that claim borders on the frivolous. The statute itself is quite adequate, if not the most desirable notice.

On the other hand, appellees' claim that beneficiaries were not given an adequate pre-deprivation opportunity to respond to the initial adverse decision – at least in writing (presumably by submitting alternative medical opinions, as in *Mathews*) – does implicate due process. It must be kept in mind, however, that episodic failures of process do not make out a constitutional violation. The Supreme Court has repeatedly cautioned that in determining whether a government's process is adequate under *Mathews*, we are to evaluate the run-of-the-mine cases and not every application. *See Walters*, 473 U.S. at 321. In this regard, the only surviving issue I see is whether, as a factual matter and prior to the recent amendment of the D.C. Code, beneficiaries, as a matter of policy and normal practice, were given an opportunity to present their case – at least in writing – prior to

actual termination of their benefits.[3] That would, of course, require that beneficiaries have access to their case files as well.[4] The District insists that, pursuant to its then-unwritten policy, benefits were not terminated until *after* beneficiaries' requests for reconsideration had been addressed and rejected and that any deviations from this policy were isolated incidents. That factual issue remains to be resolved by the district court on remand, when it addresses claims one through five.

The district court's broad preference for regulations governing the behavior of officials – employees of an independent contractor and government officials – has no basis in due process jurisprudence or, for that matter, in administrative law. *See SEC v. Chenery Corp.*, 332 U.S. 194, 203 (1947). The only real question remaining under the due process analysis is that which I have identified.

* * *

The district court's embrace of constitutional due process in order to restrict the discretion employed by administrative agencies is part and parcel of the disturbing judicial trend, which we have seen for many years, of using the Due Process Clause

---

[3]Even if the pre-termination procedures were deficient, prospective relief appears out of the question in light of the post-termination review procedures, the 2005 amendments to the CMPA, and the reissued emergency rules.

[4]Appellees contend that the District denied access to case files and in support cite the declaration of David Colodny, an attorney representing one beneficiary. That declaration merely identifies an instance in which he met resistance attempting to gain access to a client's file, but where access was ultimately granted. This is quite insufficient to cast doubt on the District's assertion that case file access was granted as a matter of *policy*.

to pursue substantive outcomes. Much has been written of the Supreme Court's invention of substantive due process (an oxymoron if there ever was one), and we have only recently seen our own court expand its admittedly unstable boundaries. *See Abigail Alliance for Better Access to Developmental Drugs v. Eschenbach*, __ F.3d __ (D. C. Cir. 2006). Using the Due Process Clause to restrict agency substantive decisionmaking, rather than to protect a claimant's process, might be thought "substantive due process-*lite*."[5]

---

[5]It should be recognized that turning process into substance is an all-too-human temptation on the part of judges who wish to ensure certain outcomes rather than merely regulate procedure. And using constitutional due process trumps legislative decisionmaking.